## THE STATE v. THOMAS J. BRODNAX and FRANK E. ESSEX, Appellants.

**In Banc, May 13, 1910.**

1. **STAMP TAX: Sales on Board of Trade: Revenue Measure.** The Act of March 8, 1907, requiring a corporation or other seller of stocks, bonds, grain, cotton or other commodities, sold on a board of trade or at an office or store, whether on margins or otherwise, where the same is not at the time actually paid for and delivered and to furnish the purchaser a memorandum on which is a stamp of the value of twenty-five cents, obtained from the State Auditor, and imposing a fine for its violation, is not a revenue measure. It does not provide for a direct or

property tax, but simply an excise or stamp tax on the right, privilege and occupation of buying or selling such things. The statute does not impose a tax upon property, but on the transfer of property.

2. ———: ———: **Uniform: Classification of Dealers.** The Act of March 8, 1907, embraces every class of persons, natural or artificial, whether it be corporations, associations, partnerships or individuals, engaged in dealing in sales of stocks, bonds, grain, cotton, petroleum or other commodity, on a board of trade or exchange, at a store or office, whether on margin or otherwise, where the same is not at the time paid for and delivered, and is not therefore subject to the objection that it singles out a part of a legal class upon which the license or stamp tax is imposed, and exempts others of the same class. It contains no unreasonable classification of the subjects of taxation, it is not violative of due process of law, nor does it deny to such dealers the equal protection of the laws.

3. ———: ———: ———: **Arbitrary Classification.** Nor is the classification made by said act, in selecting certain kinds of property and taxing the transfer of them only, so arbitrary, discriminating and unreasonable, as to deprive the dealers of their property without due process of law, or to withhold from them the equal protection of the law. It is not a tax on the property; it is an excise tax on the transfer, a license, a privilege. The State has the right to select certain pursuits for special or occupation taxes, provided all persons in the same situation are treated alike and the tax is imposed equally upon all property of the class to which it belongs.

4. ———: ———: **Discrimination Among Members of Class: Equality.** A statute which imposes a fixed and definite amount of excise taxes upon each sale, in total disregard of the amount sold or of the value of the thing sold, is not such a discrimination among the class of dealers to whom it is made to apply, as to render it invalid. The tax does not depend upon the principle of valuation or upon notice to the taxpayer, nor is it governed by the rule of appraisement or the rule of uniformity. The amount sold at different sales may vary, both in quantity and value, but the statute fixes an indisputable mode for ascertaining the amount of the excise tax, namely, twenty-five cents on each sale, and that insures equality—that is, it operates on all alike under the same circumstances.

5. ———: ———: **Interstate Commerce.** Sales of property on boards of trade and exchanges do not have anything to do with the transportation of property from one State to another, and the mere fact that the parties to the sale, or either of them, is

a resident of another State, in no way, legally or practically, makes the sale interstate commerce; and an excise tax on sales made at a place designated by the statute, "where the property is not at the time actually paid for and delivered," is not a transportation of property, or "commerce among the states," but a mere regulation of sales which every state has a right to make. It is not the property that is taxed, the tax is not a lien on the property or the bonds or certificates of stock sold, it is not enforced by levy and sale, but by civil and penal remedies against the person of the seller—by requiring him to make a memorandum of the sale, obtain a twenty-five cent stamp from the State and place that stamp upon the memorandum, and subjecting him to a fine in a criminal prosecution if he fails in that duty. The sale in no sense depends upon the physical presence in the State of the property sold, or of the purchaser, and the tax is imposed only on a sale here, and hence no question of interstate commerce is involved.

6. ————: **Title to Act: Germane.** The title to a statute, whose object as declared in the title is to make it unlawful "to buy or sell" certain articles except upon the payment of a stamp tax, is not defective for that the body of the act makes it unlawful "to keep or cause to be kept any office, store or other place wherein is permitted the buying or selling" of such articles. The words in the body of the act are germane to the title, and serve only to give effect to its announced purpose.

Appeal from Jackson Criminal Court.—*Hon. Ralph S. Latshaw,* Judge.

Affirmed.

*R. F. Walker, Percy Werner, Kimbrough Stone* and *Frank Hagerman* for appellants.

(1) The statute is a revenue measure. (2) Meaning of the statute. Ins. Co. v. State, 86 Tex. 265; 6 Am. and Eng. Ency. Law 230. (3) The tax provided for by the statute is not uniform. Federal Const., Fourteenth Amendment; sec. 3 of art. 10, sec. 4 of art. 10, sec. 53 of art. 4, and sec. 30 of art. 2, Constitution of Missouri; State ex rel. v. Ashbrook, 154 Mo. 375; Kansas City v. Grush, 151 Mo. 128; St. Louis v. Spiegel, 75 Mo. 145; St. Louis v. Spiegel, 90 Mo. 587; People v.

Mensching, 187 N. Y. 8. (4) The statute is an interference with interstate commerce. Federal Const., sec. 1, art. 8; 17 Am. and Eng. Ency. Law, 78; Robbins v. Taxing Dist., 120 U. S. 489; State v. Bockstruck, 136 Mo. 335; St. Louis v. Railroad, 14 Mo. App. 221, 89 Mo. 44; State ex rel. v. Field, 119 Mo. 593; State v. Kring, 74 Mo. 612; Railroad v. Railroad, 19 Fed. 679; State ex rel. v. Oil Co., 120 Ind. 575; Baldwin v. Franks, 120 U. S. 678; Poindexter v. Greenhow, 114 U. S. 270; U. S. v. Reese, 92 U. S. 214; Griffin v. State, 119 Ind. 520; Smith v. Maryland, 59 U. S. 71; N. Y. v. Miln, 36 U. S. 102; Railroad v. Husen, 95 U. S. 465; Lyng v. Michigan, 135 U. S. 161; Express Co. v. State Auditor, 166 U. S. 185; Crutcher v. Kentucky, 141 U. S. 47.

*Elliott W. Major,* Attorney-General, and *John M. Atkinson,* Assistant Attorney-General, for the State.

(1) The act in question is presumed to be constitutional until the contrary is clearly shown. Ex parte Loving, 178 Mo. 203; State v. Cantwell, 179 Mo. 261; State v. Aloe, 152 Mo. 477; State ex rel. v. Railroad, 48 Mo. 471; Atchison v. Andrews, 174 U. S. 96. (2) Appellants' first contention is that the act under consideration is a "revenue measure." The act does not provide a direct or property tax in any form whatever, but only an excise tax or occupation license requiring a written memorandum of such purchases and sales to be made as named in the act, and the placing on such memorandum of contracts a twenty-five cent stamp, to be bought from the State and furnished by the State Auditor. In a measure the act does produce revenue for the State, as all excise, privilege or occupation license laws do. (3) (a) Appellants' second contention is that the excise or license tax provided for by the act is not uniform, and therefore the act violates both the State and Federal Constitutions, and for that reason is void. Section 3 of article 10 of the Constitution of Missouri is clearly construed by Judge Gantt in the

case of Kansas City v. Grush, 151 Mo. 135. The classi-
fication by the Legislature of all sales of the said named
articles on "margins" is reasonable. Classification
of sales on "margins," or what is most commonly
called "futures," is not arbitrary. There is much
good reason to have a record made of such sales as a
police regulation. Otis v. Parker, 187 U. S. 609. Op-
tional sales in grain were entirely prohibited by statute
in Illinois. Booth v. People, 186 Ill. 43; Booth v. Illi-
nois, 184 U. S. 425. We wish to keep before the court
our contention that the excise tax of twenty-five cents
provided for by the act, is not imposed upon the prop-
erty sold at such sale, or on the broker making the
sale, but is an excise or license tax upon the right to
make such sale, and on the sale itself. People ex rel.
v. Reardon, 184 N. Y. 442. There is no express restric-
tion upon this power in our State Constitution and no
implied restriction, except by the primary guaranties
relating to life, liberty, property and due process of
law. The same is true of the Federal Constitution,
except as to certain subjects of national interest un-
der the control of Congress, such as imports, patent
rights and agencies used to carry the powers of Con-
gress into execution. Subject to these restraints, the
Legislature has supreme control of the power to tax,
and its action, even if arbitrary, discriminating and
unreasonable, is binding upon all persons and prop-
erty within the boundaries of the State. United States
v. Thomas, 192 U. S. 363; Nicol v. Ames, 173 U. S. 509;
People ex rel. v. Reardon, 204 U. S. 152. (b) The ex-
cise tax is uniform on all persons and corporations
coming within the classification made by the act. Each
person or corporation making a sale of such articles
named in the act on "margins," when the same is not
delivered and paid for at the time of sale, is required
to pay a stamp tax of twenty-five cents. The Legis-
lature had a perfect right to fix the amount of the
stamp tax on the number of sales made by each broker

instead of on the amount of each sale. Hatch Case, supra, 446; Hagar v. Reclamation District, 111 U. S. 701. The rule as to classification does not require absolute equality in taxation even in the same class. Absolute equality in an excise or occupation tax law is a physical impossibility. Magoun v. Bank, 170 U. S. 300; Clark v. Titusville, 184 U. S. 330; Matter of Keeney, 194 N. Y. 285; Beers v. Glynn, 211 U. S. 477; Railroad v. Powers, 201 U. S. 301; Knowlton v. Moore, 178 U. S. 41; People ex rel. v. Reardon, 204 U. S. 160; State v. Seebold, 192 Mo. 731; Commonwealth v. Wright, 79 Ky. 22; State ex rel. v. Currens, 111 Wis. 431. (4) Appellants further contend that the act is an interference with interstate commerce, and for that reason the same is void as being in conflict with the Federal Constitution. This same contention was made against the New York transfer stamp law in the Hatch Case, supra. See, also, the following authorities: Ware v. Mobile Co., 209 U. S. 405; Ware v. Mobile Co., 146 Ala. 153; Coal Co. v. Louisiana, 156 U. S. 590; Plumley v. Massachusetts, 155 U. S. 473; Alexander v. State, 86 Ga. 246. (5) A final complaint made by appellants is that the title to the act is defective when measured by the requirements of our Constitution. The title sufficiently expresses the subject-matter of the act and is not subject to the criticism made by appellants. State v. Doerring, 194 Mo. 398; Coffey v. Carthage, 200 Mo. 616; O'Connor v. Railroad, 198 Mo. 622; Taylor v. Railroad, 198 Mo. 715; State ex rel. v. Delmar Jockey Club, 200 Mo. 34.

FOX, C. J.—This is a prosecution of the defendants begun in the criminal court of Jackson county, Missouri, for a violation of an act of the Legislature passed in 1907 (Laws 1907, p. 392), and commonly known as the "Stamp Act." This act was approved March 8, 1907.

The indictment upon which the judgment in this cause rests, omitting formal parts, is as follows:

"The grand jurors for the county of Jackson, State of Missouri, being duly impaneled, upon their oath present and charge that at the county of Jackson, State of Missouri, on the .......... day of January, 1908, Thomas J. Brodnax and Frank E. Essex, officers and agents of the Board of Trade of Kansas City, Missouri, a voluntary association, did then and there willfully and unlawfully keep and cause to be kept a place commonly called the trading floor of the Board of Trade of Kansas City, wherein was then and there permitted the buying and selling of grain, provisions and other commodities, on margins and otherwise, and where at the time of such sales, so permitted as aforesaid, the grain, provisions and other commodities, so sold as aforesaid, were not then and there actually paid for and delivered, and at such time and place the sellers, or any of them, whose names are to the grand jury unknown, of the grain, provisions and other commodities, so sold on margins and otherwise, as aforesaid, did not then and there cause to be made a complete record of the grain, provisions and other commodities sold, the purchasers and the time of delivery in a book kept for that purpose, and at said time and place the sellers, or any of them, whose names are to the grand jury unknown, did not then and there deliver to the purchasers of said grain, provisions and other commodities, so sold as aforesaid, a written or printed memoranda of said sales, on which they, the said sellers, or any of them, had placed or caused to be placed a stamp of the value of twenty-five cents, which they, the sellers, had purchased of the State Auditor and had on hand before making such sales; contrary to the statutes in such case made and provided, and against the peace and dignity of the State."

To this indictment the defendants interposed a demurrer, in which the constitutionality of the act upon which the indictment is predicated is challenged. Such demurrer, in substance, alleged that said indictment

does not state facts which constitute an offense against the State of Missouri, and that the statute, the violation of which is alleged in said indictment, is null and void, being in violation of sections 20 and 30 of article 2, and sections 28 and 53 of article 4, and of sections 3 and 4 of article 10, of the Constitution of the State of Missouri, and of the Interstate Commerce provisions of section 8 of article 1, and of the Fourteenth Amendment to the Constitution of the United States.

The defendants were duly arraigned and entered each for himself a plea of not guilty.

By consent of the parties to this proceeding a jury was waived and the cause was submitted to the court for trial. Before the introduction of any evidence defendants objected to the introduction of any evidence on the following grounds, to-wit:

"1. The statute under which this proceeding is instituted is discriminatory, abridges the privileges and immunities of citizens of the United States, deprives defendants of their property without due process of law, and denies to them the equal protection of the law, contrary to the provisions of the Fourteenth Amendment of the Constitution of the United States.

"2. The statute under which the proceeding is instituted is an unwarranted attempt to regulate interstate commerce and is violative of section 8, article 1, of the Constitution of the United States.

"3. The statute under which this proceeding is instituted is invalid as a tax not levied in proportion to value, in violation of section 4 of article 10, Constitution of Missouri.

"4. The statute under which the proceeding is instituted is invalid as providing for a tax which is not uniform upon the same class of subjects, in violation of section 3 of article 10, Constitution of Missouri.

"5. The statute under which the proceeding is instituted is void, being a special law, in violation of section 53 of article 4, Constitution of Missouri.

"6. The statute under which the proceeding is instituted is void, being passed in a bill which contained more than one subject, and which subjects were not clearly expressed in the title thereof, in violation of section 28 of article 4 of the Constitution of Missouri.

"7. The statute under which the proceeding is instituted is void as depriving defendants⋅ of property without due process of law, in violation of section 30 of article 2, Constitution of Missouri.

"8. The statute under which the proceeding is instituted is void as taking private property for private use without compensation, in violation of section 20 of article 2, Constitution of Missouri."

The objections thus made were by the court overruled, the defendants properly preserving their exceptions to the action of the court in overruling such objections. The cause was then submitted to the court upon the following agreed statement of facts, subject to the objections as herein indicated. The agreed facts were as follows:

The defendants are citizens of the United States and of Jackson county, Missouri. The title of the act under which the indictment was found is, "An act making it unlawful for any corporation, co-partnership or person to buy or sell, for future delivery, stocks or bonds of any corporation, or petroleum, cotton, grain, provisions or other commodities, without at the time delivering or receiving a written memoranda with a stamp purchased of the State Auditor, and to provide a road fund, and to prescribe the manner of its distribution; and providing penalties for the violation thereof." That Thomas J. Brodnax and Frank E. Essex, of Jackson county, Missouri, defendants herein, on the . . . . . . day of January, 1908, as members, officers and agents of the Board of Trade of Kansas City, Missouri, a voluntary association, did keep and cause to be kept a place commonly known and called "a trading floor" of the Board of Trade of Kansas City, Missouri, wherein was permitted the buying and selling of grain, provisions and other commodities on margins and otherwise, and where, at the time of such sales so permitted as aforesaid, the grain, provisions and other commodities, so sold, as aforesaid, were not actually paid for and delivered, and at the time and place of such sales the sellers or any

228 Sup—3

of them, of the grain, provisions and other commodities as aforesaid, so sold on margins and otherwise, did not deliver to the purchasers of said grain, provisions and other commodities so sold as aforesaid, written or printed memoranda of said sales on which they (the sellers) or any of them had placed or caused to be placed a stamp of the value of twenty-five cents which they (the sellers) had purchased of the State Auditor of the State of Missouri and had on hand before the making of such sales.

To all of the above facts the defendants object as incompetent, irrelevant and immaterial and because the statute the violation of which is alleged in the indictment herein filed is null and void, being in violation of sections 20 and 30, of article 2, sections 28 and 53 of article 4, sections 3 and 4 of article 10, of the Constitution of the State of Missouri, and the interstate commerce provisions of section 8 of article 1, and of the Fourteenth Amendment to the Constitution of the United States, which objections are by the court overruled.

To which ruling the defendants then and there excepted.

"A substantial part of the sale aforesaid being of grain, provisions and other commodities which were at the time of sale in course of transportation as articles of interstate commerce."

To the facts immediately preceding, the State objects as incompetent, irrelevant and immaterial, which objection is by the court overruled.

At the conclusion of the evidence the defendants requested the court to give numerous declarations of law. We deem it unnecessary to reproduce in the statement the declarations of law so requested. It is sufficient to say that they were along the lines of the grounds alleged in the demurrer and the objections urged to the introduction of any evidence at the commencement of the trial. All of the declarations of law, as requested, were by the court refused, to which action of the court in refusing such declarations the defendants duly preserved their exceptions. The cause was then submitted to the court and the defendants were found guilty as charged in the indictment, and their punishment assessed at a fine of fifty dollars each.

Timely motions for new trial and in arrest of judgment were filed, and by the court taken up and overruled. Judgment was entered in accordance with the

finding of the court, and from this judgment defendants, in due time and proper form, prosecuted this appeal, and the record is now before us for consideration.

## OPINION.

The record before us discloses that the defendants were convicted in the criminal court of Jackson county, Missouri, upon an indictment by the grand jury of said county charging them with a violation of an act of the General Assembly of Missouri passed in 1907, and approved March 8th of that year. The act upon which the indictment in this cause and the judgment of conviction must rest, was as follows:

An act making it unlawful for any corporation, co-partnership or person to buy or sell, for future delivery, stocks or bonds of any corporations, or petroleum, cotton, grain, provisions or other commodities, without at the time of delivering or receiving a written memoranda with a stamp purchased of the State Auditor and to provide a road fund, and to prescribe the manner of its distribution; and providing penalties for the violation thereof.

*Be it enacted by the General Assembly of the State of Missouri, as follows:*

Section 1. It shall be unlawful for any corporation, association, co-partnership or person to keep, or cause to be kept, in this State, any office, store or other place wherein is permitted the buying or selling the shares of stocks or bonds of any corporation, or petroleum, cotton, grain, provisions or other commodities, either on margins or otherwise, where the same is not at the time actually paid for and delivered, without at the time of the sale the seller shall cause to be made a complete record of the thing sold, the purchaser and the time of delivery in a book kept for that purpose; and at the same time the seller shall deliver to the purchaser a written or printed memoranda of said sale, on which he shall place, or cause to be placed, a stamp of the value of twenty-five cents, which the seller shall purchase of the State Auditor, and have on hand before making such sale; and it shall be the duty of the State Auditor, upon the passage of this act, to have printed or engraved stamps for this purpose, of such design as he may select; and on application and payment for said stamps, to immediately furnish the same to the applicants applying therefor: Provided, further, that it shall be unlawful for the purchaser to receive the memoranda aforesaid until it bears the stamp above provided for.

Sec. 2. The fund arising from the sale of the stamps provided for in section one of this act shall, in the hands of the State Auditor, constitute a road fund; and it shall be the duty of the said Auditor to distribute said fund, annually, to the counties in the State and the city of St. Louis, in the same proportion and in like manner as the State school funds are now distributed by him.

Sec. 3. Any person, whether acting individually or as a member, or as an officer, agent or employee of any corporation, association or co-partnership, who shall be guilty of violating any of the provisions of section one, shall, upon conviction thereof, be fined in any sum not less than fifty, nor more than one thousand dollars, and in addition thereto may be imprisoned in the county or city jail for a period of not less than thirty days, nor to exceed one year.

Approved March 8, 1907.

The validity of this statute is challenged by learned counsel for appellants upon numerous grounds, which may thus be briefly stated:

First: It is insisted that the statute is purely a revenue measure.

Second: That the tax provided by the statute is not uniform, and hence is violative of the Fourteenth Amendment of the Constitution of the United States, as well as sections 3 and 4 of article 10, and section 53 of article 4, and section 30 of article 2, of the Constitution of Missouri.

Third: It is earnestly contended that the statute is an interference with interstate commerce; hence, is violative of section 1 of article 8 of the Constitution of the United States.

These are the propositions confronting us and their solution must be sought by a fair and reasonable application of the rules of law applicable to the questions presented. We will treat the propositions in the order as herein indicated.

## I.

Directing our attention to the insistence of counsel for appellant that this act is a revenue measure and its validity must be tested by the taxing power, it is

sufficient to say, in our opinion, that the test of the validity of this act is not to be applied to the usual taxing power in the imposition of a direct or property tax in any of the forms in which they are ordinarily imposed. Manifestly the act does not provide a direct or property tax in any form whatever, but simply provides for an excise or stamp tax on the right, privilege and occupation of buying or selling shares of stocks, or bonds of any corporation, or petroleum, cotton, grain, provisions or other commodities, either on margins or otherwise, where the same is not at the time actually paid for and delivered. As was said in Nicol v. Ames, 173 U. S. 509, where a tax of this character was in judgment before that court, "The tax is in effect a duty or excise laid upon the privilege, opportunity or facility offered at boards of trade or exchanges for the transaction of the business mentioned in the act. It is not a tax upon the business itself which is so transacted, but it is a duty upon the facilities made use of and actually employed in the transaction of the business, and separate and apart from the business itself. It is not a tax upon the members of the exchange nor upon membership therein, nor is it a tax upon sales generally. The act limits the tax to sales at any exchange or board of trade, or other similar place, and its fair meaning is to impose a duty upon those privileges or facilities which are there found and made use of in the sale at such place of any product or merchandise."

So it may be said of this act, that it has no application to sales generally, but it is directed to any corporation, association, co-partnership or person that keeps or causes to be kept in this State any office, store or other place for the purpose of transacting certain forms of commercial dealings, that is to say, wherein the buying or selling is permitted of shares of stocks or bonds of any corporation, or petroleum, cotton, grain, provisions or other commodities, on margins or

otherwise, where the same is not at the time actually paid for and delivered. In other words, by the act it is sought to regulate the places of business as designated in the statute where stocks, bonds, etc., are bought and sold on margins or otherwise, where the same are not at the time actually paid for and delivered, by requiring, in the transaction of business of that character, that a complete record be made of the things sold, the name of the purchaser and the time of delivery in a book kept for that purpose, with the further requirement that the seller shall deliver to the purchaser a written or printed memorandum of such sale, on which he shall place, or cause to be placed, a stamp of the value of twenty-five cents.

This act has no application to the ordinary and usual business transactions, such as might be conducted by a merchant or butcher who is engaged in the business of selling goods, wares, merchandise and provisions, and who may sell such goods, wares, merchandise and provisions upon credit, but is directed to a class of business which has made marked advancements along the lines of commercial transactions, particularly in the large cities and towns of this country. It has application to corporations, associations, co-partnerships or persons that may keep and furnish meeting places for those engaged in the purchase or sale of commodities or other things to be sold upon margins or otherwise, and to sales made in such places without at the time any payment being made for the article purchased or any delivery of such article. This act embraces every character of association, whether they be corporations or voluntary associations, or whether they be called boards of exchange or boards of trade, as well as embracing partnerships and individuals who may keep and furnish places of the character designated by this act.

Dealings of the character and the places furnished for such dealings which are sought to be regulated by

the imposition of certain conditions and a stamp tax
upon sales that are made, are not subjects which are
unknown, either to the people or to the legislative bodies
that may in a legislative way deem it essential to give
them consideration.  They are places where important
transactions occur; in fact, it is at such places that fre-
quently the prices of commodities are fixed, and an
enormous amount of business of the country is trans-
acted and takes place, upon boards of trade or exchange
and other places of similar character.

In Nicol v. Ames, supra, it was fully recognized
that dealings in the places of the character designated
by the act were subjects of such importance as to de-
mand the consideration and attention of even the tax-
ing power of the Government. It was said in that case
that the places of the character treated of in the act
now under consideration "furnish a meeting place for
those engaged in the purchase and sale of commodities
or other things to be sold, and in that way they offer
facilities for a market for them.  Dealings among mem-
bers so engaged tend to establish the market price of
the articles they deal in, and that price is very apt to be
the price for the same article when bought or sold
outside.  The price is arrived at by offers to sell on
the one side and to purchase on the other, until, by
what has frequently been termed the 'higgling' of the
market, a price is agreed upon and the sales are accom-
plished.  In arriving at this price, of course, the great
law of the cost of production and also that of supply
and demand enter into the problem, and it is upon a
consideration of all matters regarded as material that
the agreement to buy and sell is made.  The prices thus
fixed are usually followed when the transaction occurs
outside, and the market price means really the exchange
price.  That an enormous amount of the business of the
country which is engaged in the distribution of the
commodities grown or produced therein is transacted
and takes place through the medium of boards of trade

or exchanges cannot be doubted. Nor is there any doubt that these exchanges facilitate transactions of purchase and sale, and it would seem that such facilities or privileges, even though not granted by the Government or by a State, ought nevertheless to be recognized as existing facts and to be subject to the judgment of Congress as fit matters for taxation."

Manifestly if the authority of the taxing power may be invoked and certain taxes imposed upon the dealings and transactions now under consideration, for a much stronger reason the power to regulate and impose a license or stamp tax by the State government should not be seriously questioned under the Constitution and laws of this State. The provisions of this act simply impose certain conditions upon the transactions in the places furnished and designated by the statute, that is to say, it imposes a license or stamp tax, which is fully set forth in the statute, and while this tax may furnish a revenue, it falls far short of being a purely revenue measure by the exercise of the taxing power of the State in the imposition of a direct tax upon property or values of property.

In the Constitution of the State of California there was a provision absolutely prohibiting sales on margins, and this provision was upheld by the Supreme Court of the United States in Otis v. Parker, 187 U. S. 1. c. 609, 610. The court in discussing the provision, said: "We cannot say that there might not be conditions of public delirium in which at least a temporary prohibition of sales on margins would be a salutary thing. Still less can we say that there might not be conditions in which it reasonably might be thought a salutary thing, even if we disagreed with the opinion. Of course, if a man can buy on margin he can launch into a much more extended venture than where he must pay the whole price at once. If he pays the whole price he gets the purchased article, whatever its worth may turn out to be. But if he

State v. Brodnax and Essex.

buys stocks on margins he may put all his property into the venture, and being unable to keep his margins good if the stock market goes down, a slight fall leaves him penniless, with nothing to represent his outlay."

So it may be said of the act now under consideration. There is no impropriety (the regulations not being unreasonable), in regulating the dealings at the places to which the statute refers. It simply provides for a record being kept of all the sales and purchases, the names of the sellers and purchasers and then emphasizes it with the requirements that a memorandum of the sale must be given to the purchaser by the seller, duly stamped with a stamp of the character provided for by the statute.

There are many good reasons for the regulation of business transactions of the character with which we are dealing, and they are so well known to the business public that we will not burden this opinion by enumerating the many good results that will flow from a strict regulation of the transaction of business of the class and character of which the statute now under consideration treats. It is sufficient to direct attention to the case of Otis v. Parker, supra, wherein the Supreme Court of the United States clearly indicated the dangers to which dealing in margins and futures might lead.

We shall not pursue this subject further. We are unable to give our assent to learned counsel's first contention that this is a revenue measure and that its validity must be tested by the Constitution and laws applicable to the taxing power in the imposition of taxes directly upon property or the value of property.

## II.

We are next confronted with the proposition insisted upon by counsel for appellants that the tax is not uniform. It is urged that this tax is not directed and imposed upon the same class of subjects within the territorial limits of the authorities levying the tax,

and that the classification of subjects is not a true classification. In other words, that the classification of subjects for taxation is unreasonable. It is also insisted that the tax discriminates between members of the class affected thereby.

For these reasons the provisions of the statute now under consideration which provide for a license or stamp tax upon the dealings and transactions in the places designated in the statute, are assailed as being violative of the due process of law and equal protection of the laws, provided for in the Fourteenth Amendment of the Constitution of the United States, as well as section 30, article 2, and section 53, article 4, and section 3, article 10, of the State Constitution.

It is sufficient to say upon this proposition that we pointed out in the first paragraph of this opinion the class of persons to whom this law is directed, and the character of dealings and transactions to which the law was made applicable. In our opinion, this law clearly embraces every class, whether it be corporation, association, either voluntary or otherwise, partnership or person which furnishes a place for dealing in sales of stocks, bonds, etc., upon margins or otherwise, where the same is not at the time actually paid for and delivered, and embraces all classes who may deal in such places so furnished.

It is clear that the character of business which is treated of by the statute is fully recognized as a separate and distinct business from all other classes. That the statute embraces every class, whether it be corporation, association, partnership or person who may furnish a place or may deal in transactions in such places, there can be, in our opinion, no sort of doubt; therefore, we conclude that so far as the class of persons to whom this law is made applicable, whether natural or artificial, this statute embraces the entire class and is not subject to the objection that it singles out a part of a legal class upon which the license or

stamp tax is imposed and exempts others of the same
class. Manifestly the selection of the business calling
and the class pursuing such calling were proper and
appropriately selected by the Legislature of this State
in dealing with that subject.

It is next insisted that the attempted classification
of transactions is arbitrary. This same objection (and
it was earnestly insisted upon), to the classification of
subjects for taxation, was in judgment in People ex
rel. Hatch v. Reardon, 184 N. Y. l. c. 442. In that
case the subject was exhaustively treated and the au-
thorities applicable to it were all carefully reviewed
and the rulings of the court upon substantially the
same propositions involved in the case at bar, were
adverse to the contentions of learned counsel for ap-
pellants. It was insisted in the New York case that
the classification made by selecting one kind of prop-
erty and taxing the transfer of that only, was so arbi-
trary, discriminating and unreasonable as to deprive
certain persons of their property without due process
of law and to withhold from them the equal protection
of the laws. It was said by the court in that case that
all taxation is arbitrary, for the reason that it compels
the citizen to give up a part of his property. It was
also said that it is generally discriminating, for other-
wise everything would be taxed, which has never yet
been done, and there would be no exemption on ac-
count of education, charity or religion, and frequently
it is unreasonable, but that does not make it uncon-
stitutional, even if the result is double taxation. Fur-
ther discussing this proposition the New York court
used this language: "A tax may be imposed only
on certain callings and trades, for when the State ex-
erts its power to tax it is not bound to tax all pursuits
or all property that may be legitimately taxed for gov-
ernmental purposes. It would be an intolerable burden
if the State could not tax any property or calling un-
less at the same time it taxed all property or all call-

ings. [Connolly v. Sewer Pipe Co., 184 U. S. 540, 562; Armour Packing Co. v. Lacy, 200 U. S. 226, 235.] The Legislature must decide when and how and for what public purposes a tax shall be levied, and must select the subjects of taxation.'' [1 Cooley on Taxation (3 Ed.), 255.]

The Hatch case by the New York court, very clearly, and in our opinion, correctly announced this rule, thus: ''The Legislature has power to classify as it sees fit by imposing a heavy burden on one class of property and no burden at all upon others, the remedy for injudicious action being in the hands of the people, not of the courts. Arbitrary selection and discrimination characterize the history of legislation, both State and National, with reference to taxation, yet, when all persons and property in the same class are treated alike, it has uniformly been sustained both by the State and Federal courts. . . . The power of taxation necessarily involves the right of selection, which is without limitation, provided all persons in the same situation are treated alike and the tax imposed equally upon all property of the class to which it belongs. [Matter of McPherson, 104 N. Y. 306, 318; Matter of Gould, 156 N. Y. 423, 427.] The equal protection of the laws 'only requires the same means and methods to be applied impartially to all the constituents of each class, so that the laws shall operate equally and uniformly upon all persons in similar circumstances.' [Kentucky Railroad Cases, 115 U. S. 321, 337.] Or, in other words, all persons must 'be treated alike under like circumstances and conditions both in the privilege conferred and the liabilities imposed.' [Magoun v. Bank, 170 U. S. 283, 293; Hayes v. Missouri, 120 U. S. 68; Barbier v. Connolly, 113 U. S. 27, 32.] 'Let it reach all of a class, either of persons or things, it matters not whether those included in it be one or many, or whether they reside in any

particular locality or are scattered all over the State.'
[1 Cooley on Taxation (3 Ed.), 260.]"

Finally it was held in that case that the tax in question was not imposed upon property, but on the transfer of a certain class of property, extensively bought and sold throughout the State, and that there was no discrimination in the imposition of the tax involved in that case.

It is next earnestly insisted by counsel for appellants that the act now under consideration makes a discrimination within the class designated by such act. In support of the contention it is insisted by counsel for appellants that the inequality of the value of the property sold in the places designated by the statute is so gross as to render the provisions of the statute imposing the license or stamp tax unreasonable, and that such inequality in value is sufficient to warrant the courts in holding such statute invalid. Again, with all due respect to the ability and learning of counsel for appellants, we are unable to give our assent to the contentions upon this proposition. It must not be overlooked that the question of a tax involved in this proceeding is a mere license or stamp tax for the right or privilege of participating in dealings and transactions in a business calling and at places pointed out by the statute. The imposition of this license or stamp tax does not depend upon any principle of valuation or on any notice to the taxpayer. This was expressly ruled in the New York case, to which reference has heretofore been made. It was further pointed out in that case that even the tax which was there involved was not a direct tax governed by the rule of appraisement, and was not an indirect tax governed by the rule of uniformity. That it was not like a general tax upon the bulk of property in the State which must be paid in any event; that the payment of the tax was dependent upon a sale. If there was no sale there was no tax. The court said: "Neither notice nor

grievance day is required, for no valuation is made except by the statute itself, and there is no provision in either Constitution requiring such a tax to be laid on an *ad valorem* basis. There can be no tax without a sale, even if the property is of great value and is owned in every household. When a sale is made the tax follows, and the Legislature had the right to measure it in any way that it saw fit.'' The court then proceeded to direct attention as to what had been done and fully recognized by the court along the line of the imposition of a tax irrespective of value, and pointed out that ''a tax of two cents on every check, regardless of the amount for which it was drawn, and of five cents on a written contract, whether it covered a transaction involving hundreds or thousands, may be referred to as examples of what has been done without serious question in the imposition of excise taxes. A poll tax does not depend upon the income or earning capacity of the person subjected to it. A tax on carriages, guns and watches does not rest on the value of the subjects taxed. They are counted, not appraised. [Hylton v. United States, 3 Dall. 171; Railroad v. Pennsylvania, 134 U. S. 232, 237.] The same is true of an excise tax on legal process, domestic animals, avocations and the like, of which there have been many instances during the history of the nation and the different States. Such powers of taxation, as was said in the late case, 'have admittedly belonged to State and nation from the foundation of the government.' [Knowlton v. Moore, 178 U. S. 41, 60.] 'Of the different kinds of taxes which the State may impose, there is a vast number of which, from their nature, no notice can be given to the taxpayer, nor would notice be of any possible advantage to him, such as poll taxes, license taxes (not dependent upon the extent of his business) and generally, specific taxes on things, or persons, or occupations. In such cases the Legislature fixes its amount and that is the end of the

matter. . . . No right of his is therefore invaded. Thus, if the tax on animals be a fixed sum per head, or on articles a fixed sum per yard, there is nothing the owner can do which can affect the amount to be collected from him.' [Hagar v. Reclamation District, 111 U. S. 701, 709.]"

The ruling by the New York Court of Appeals in People ex rel. Hatch v. Reardon, supra, was fully upheld by the Supreme Court of the United States in 204 U. S. 152. The contentions in the Supreme Court of the United States in that case were substantially the same as in the case when pending in the New York Court of Appeals, and in many respects similar to the contentions made in the case at bar. It was there insisted that the classification was arbitrary; that it was a direct tax upon property or its value, and finally that the discrimination between the class selected rendered the statute unreasonable. The rulings of the Supreme Court upon these propositions were adverse to the contentions so ably and earnestly urged. It appears that in that case the question was involved as to requiring a memorandum in writing, and the court simply said that "a statute requiring a memorandum in writing is quite as clearly a regulation of the business as a tax."

As applicable to the subject of discrimination, which is now under consideration in the case at bar, the inequality of the value of the stocks sold was urged as one of the strong reasons why the owners of the stocks were deprived of their property without due process of law. The court, in reciting the facts, said: "One of the stocks was worth thirty dollars and seventy-five cents a share of the face value of one hundred dollars, the other one hundred and seventy-two dollars." The court discussing these facts, as applicable to inequality in value, used this language: "The inequality of the tax, so far as actual values are concerned, is manifest. But here again equality

in this sense has to yield to practical considerations and usage. There must be a fixed and indisputable mode of ascertaining a stamp tax. In another sense, moreover, there is equality. When the taxes on two sales are equal, the same number of shares is sold in each case; that is to say, the same privilege is used to the same extent. Valuation is not the only thing to be considered. As was pointed out by the Court of Appeals, the familiar stamp tax of two cents on checks, irrespective of amount, the poll tax of a fixed sum, irrespective of income or earning capacity, and many others, illustrate the necessity and practice of sometimes substituting count for weight. See Railroad v. Pennsylvania, 134 U. S. 232; Bank v. Pennsylvania, 167 U. S. 461. Without going farther into a discussion which, perhaps, could have been spared in view of the decision in Thomas v. United States, 192 U. S. 363, and the constitutional restrictions upon Congress, we are of the opinion that the New York statute is valid, so far as the Fourteenth Amendment is concerned.''

What was said in that case may very appropriately be applied to the case at bar. This statute, in harmony with the rule announced, provided and fixed an indisputable mode of ascertaining the amount of the license or stamp tax, and manifestly there was equality, for the license or stamp tax was required on sales whether large or small, and the same privilege which was awarded to the entire class selected who desired to exercise the privilege in dealing in transactions at the places designated by the statute could be used by each member of the class to the same extent. This same principle was clearly announced in the case of People ex rel. v. Metz, 193 N. Y. l. c. 160.

In Magoun v. Illinois Trust & Savings Bank, 170 U. S. l. c. 300, it was expressly held, in treating of the subject of equality in taxation, that the ''rule does not require, as we have seen, exact equality in taxation.

It only requires that the law imposing it shall operate on all alike under the same circumstances.''

This is a sufficient indication of our views upon this proposition. We have pointed out, in the well-considered adjudicated cases by the highest courts in the land, the rules applicable to this subject with which we are now confronted, and our conclusion deduced from a most careful consideration of such authorities to which we have made reference is, that the statute now under consideration is not invalid by reason of any discrimination in the class selected, or by reason of any inequality in the imposition of the requirement that a memorandum shall be made by the seller to the purchaser of the commodities sold, in the manner and at the places provided for by the law, and that a twenty-five cent stamp shall be placed upon each memorandum of sale so made at such places.

In arriving at the conclusion as indicated upon this proposition, we have by no means been unmindful of the authorities cited by learned counsel for appellants. We have carefully considered the case of People v. Mensching, 79 N. E. 884-886, as well as the other cases to which our attention was directed, and in our opinion those cases can readily be distinguished from the cases upon which we have predicated our conclusion. In fact, the recitation of the facts upon which those cases were decided furnishes the distinction between them and the cases to which we have made reference.

## III.

This brings us to the consideration of the insistence on the part of the appellants that the statute now under consideration is illegal and invalid for the reason that it interferes with interstate commerce, and is therefore violative of the provisions of section 1, article 8, of the Constitution of the United States.

It is sufficient to say upon this proposition, after

a most careful consideration of the subject, that in our opinion the license or stamp tax required by the statute involved in this proceeding upon sales made at the places and in the manner provided by the statute does not, even in the remotest degree, interfere with interstate commerce. This subject was in judgment in the Supreme Court of the United States in the Hatch case. It was fully discussed by that court and all of the authorities applicable to the subject were fully considered, and the conclusion reached was that there was not a shadow of a ground for calling the transaction between the parties, in which a stamp tax was required upon a memorandum of sales, interstate commerce. The court said in that case, in treating of this subject, that ''the communications between the parties were not between different States, as in Telegraph Co. v. Texas, 105 U. S. 460, and the bargain did not contemplate or induce the transport of property from one State to another, as in the drummer cases. Rearick v. Pennsylvania, 203 U. S. 507. The bargain was not affected in any way, legally or practically, by the fact that the parties happened to have come from another State before they made it. It does not appear that the petitioner came into New York to sell his stock. . . . It appears only that he 'sold after coming into the State. But we are far from implying that it would have made any difference if he had come to New York with the supposed intent before any bargain was made. . . . The facts that the property sold is outside of the State and the seller and buyer foreigners, are not enough to make a sale commerce with foreign nations or among the several States, and that is all that there is here. On the general question there should be compared with the drummer cases the decisions on the other side of the line. [Nathan v. Louisiana, 8 How. 73; Woodruff v. Parham, 8 Wall. 123; Brown v. Houston, 114 U. S. 622; Emert v. Missouri, 156 U. S. 296.] A tax is not an unconstitutional regulation in every

case where an absolute prohibition of sales would be one. [American Steel & Wire Co. v. Speed, 192 U. S. 500.] We think it unnecessary to explain at greater length the reasons for our opinion that the petitioner has suffered no unconstitutional wrong.''

It must not be overlooked that the license or stamp tax required by the statute involved in this proceeding is not a tax upon property, but is a requirement to place a twenty-five cent stamp upon the sale of property made in the manner and at the places provided for by such statute. In other words, it is a license or stamp tax upon a particular kind of contract when made in this State. This proposition confronted the New York Court of Appeals in the Hatch case, supra, and in treating of the subject of a stamp tax upon sales of certificates of stock, that court thus stated the law: ''The certificate, itself, is not liable for the tax, but the person selling it is. The tax is not a lien on certificates, nor on shares, which may be owned to any extent throughout the State, free from any claim under the statute in question. It is the sale alone that gives rise to the tax, which is imposed through the command of the law to the seller to pay the tax when the contract to sell is made, and it is enforced not by levy and sale, but by civil and penal remedies against the person of the seller. While this tax, the same as all other taxes, must ultimately come out of the property of the seller, it cannot be enforced against the certificate sold as distinguished from his other property.''

In further discussing that question it was said that ''jurisdiction over the persons who made the contract does not depend on their residence, but on their presence within the State when the contract is made. Jurisdiction over property depends on its physical presence here, or if it is personal property, either its presence here or the residence of the owner here. . . . When two citizens of Connecticut come into this State and make a contract here, to be enforced here, both they

and their contract are subject to its laws, and they are not only entitled to the protection thereof, but are under the same obligation to obey as if they were citizens. Such a contract is valid or invalid as our laws declare. When the law commands that if they, or any other persons, whether residents or not, make a certain contract here they must pay a certain tax for the privilege, the command is personal, addressed to them as persons then within the State, and is as binding on them as if they resided in the State. Their rights and their obligations in reference to such a contract are the same as if they were citizens, no greater and no less. The fact that the contract, though made here, may relate to property, real or personal, situated elsewhere, has no bearing upon the question. By coming into the State they subjected themselves to its laws and to its taxing power, so far as the making of such a contract is concerned. It is immaterial whether the contract is between residents or non-residents, or between a resident and a non-resident, for if it is made within the State it is subject to taxation by the State."

Manifestly the State has power within its territory to regulate all business done, and, as was said in Matter of McPherson, 104 N. Y. 306:

"It has never been questioned that the Legislature can impose a tax upon all sales of property, upon all incomes, upon all acquisitions of property, upon all business and upon all transfers."

The requirements of the statute now under consideration have no bearing or influence whatever upon property sold. It is addressed to those furnishing the places, as well as those who deal in the transaction in such places. In other words, in sales of property in the manner and at the places pointed out by the statute it is required, where a sale is made in the manner contemplated by that statute, that the seller shall make a memorandum of such sale, and place upon such memorandum a twenty-five cent stamp. We repeat, that

transactions of this character have no influence what-
ever upon commerce between different States, and, as
was in substance said by the Supreme Court of the
United States, sales of this character do not contem-
plate or have anything to do with the transportation
of property from one State to another, as in the drum-
mer cases, and the mere fact that the parties to such
sale, or either one of them happens to be a resident
of another State, in no way, legally or practically, af-
fects the transaction and falls far short of subjecting
such transaction to condemnation for the reason that
it interferes with interstate commerce. Our conclusion
upon this proposition is that this statute in no way
interferes with interstate commerce and should not be
held invalid for that reason.

## IV.

Finally it is insisted by counsel for appellants
that the title to this act is defective, and therefore is
not in harmony with the provisions of section 28, article
4, of the Constitution of this State. Our attention upon
this insistence is directed to the provisions of section 3.

It is said in the brief of counsel for appellants that
"the object of the law as expressed in its title is to make
'it unlawful . . . to buy or sell' certain articles
except upon certain conditions, and providing penalties
therefor. The act in addition makes it unlawful 'to
keep or cause to be kept . . . any office, store or
other place wherein is permitted the buying or selling'
which is in question. This is a separate and distinct
provision and its violation is a crime separate and dis-
tinct from that of the seller or buyer who violates the
law."

Directing our attention to this proposition, it may
be said that while counsel correctly state that the pur-
pose of the law, as expressed in its title, is to make
"it unlawful . . . to buy or sell" certain articles
except upon certain conditions, and providing penalties

therefor, the contention of counsel is predicated upon the provisions in the body of the act, that is, that the act, in addition to making it unlawful to buy or sell, makes it unlawful "to keep or cause to be kept . . . any office, store or other place wherein is permitted the buying or selling, which is in question." It is argued that to keep or cause to be kept a place for the buying or selling is a separate and distinct provision, and its violation is a crime separate and distinct from that of the seller or buyer who violates the law.

There is no subject that has more frequently had the attention of this court than the one in which acts of the General Assembly have been challenged for failure to conform its legislation to requirements of section 28, article 4, of the Constitution of this State, which substantially provides that no bill shall contain more than one subject, which shall be clearly expressed in its title. It is this provision of the Constitution that appellants invoke in the case at bar.

The rules applicable to this subject are firmly established in this jurisdiction. It has been uniformly and repeatedly held by this court that the objects and purposes of this constitutional provision were to prevent incongruous, disconnected matters which had no relation to each other, from being joined in one bill; however, it has always been recognized that all matters that are germane to the principal subject and have a natural connection with it, might properly be incorporated in the same bill. [O'Connor v. Railroad, 198 Mo. l. c. 633.]

In Ewing v. Hoblitzelle, 85 Mo. 64, the rule applicable to this subject was very clearly and correctly announced. It was there said: "Where all the provisions of a statute fairly relate to the same subject, have a natural connection with it, are the incidents or means of accomplishing it, then the subject is single . . . and if it is sufficiently expressed in the title, the statute is valid." To the same effect are

State ex rel. v. Miller, 100 Mo. 439; St. Louis v. Tiefel, 42 Mo. 578; State v. Mathews, 44 Mo. 523; State v. Miller, 45 Mo. 495; Hannibal v. County of Marion, 69 Mo. 571; State ex rel. v. Mead, 71 Mo. 268.

In State ex rel. v. Bronson, 115 Mo. 271, it was ruled that this provision of the Constitution should be reasonably and liberally construed and applied, due regard being had to its object and purpose. It was also again announced in the case last cited that if all the provisions of the bill have a natural relation and connection, then the subject was single, and this, too, though the bill contains many provisions. See also the comparatively recent cases, which are in line with cases heretofore referred to, of State v. Doerring, 194 Mo. 398; Coffey v. Carthage, 200 Mo. 616; Taylor v. Railroad, 198 Mo. 715; State ex rel. v. Delmar Jockey Club, 200 Mo. 34.

The object of the law now under consideration is clearly expressed in the title of the act, that is, making it unlawful to buy or sell certain articles except upon certain conditions, and providing penalties therefor. The provision in the act to which reference is not made in terms in the title of the act, upon which appellants predicate their insistence concerning this subject, is that it shall be unlawful to keep or cause to be kept any office, store or other place wherein is permitted the buying or selling, etc., without a compliance with the conditions imposed by the statute. Applying the rules applicable to this subject announced in the cases heretofore referred to, it is clear that the provision directed to persons furnishing the places wherein articles are bought and sold is germane to the principal subject and has a natural connection with it. Manifestly, if the penalties imposed will prevent the class of persons designated in the statute, either artificial or natural, from furnishing the places where the buying and selling take place, requiring a compliance with the conditions imposed, in our opinion, would aid very

materially in carrying out the purposes and objects of the law, as expressed in its title. The provision to which our attention has been directed, which embraces the persons who furnish the places for the buying and selling of the articles, without seeing that the conditions are complied with, in our opinion, is germane to the subject as expressed in the title and has a very close and natural connection with such subject. Our conclusion upon this proposition is that the title to this act is in harmony with the provisions of article 4, section 28, of the Constitution of this State, and that the provisions in the body of the act are in keeping with the subject, as expressed in its title.

We have given expression to our views, as herein indicated, which results in the conclusion that the act upon which this prosecution rests is constitutional and valid, and the judgment of the trial court should be affirmed, and it is so ordered.

The foregoing opinion, heretofore rendered in Division Number Two, on the case coming into Court In Banc, is adopted as the opinion of the court. *Gantt, Burgess, Valliant* and *Lamm, JJ.,* concur; *Graves, J.,* dissents; *Woodson, J.,* not sitting.