131  505
134  304
131  505
141   53
131  505
 85a 251
131   505
101a 7214

THE STATE *ex rel.* RUTLEDGE *et al.* v. ST. LOUIS SCHOOL BOARD *et al.*

In Banc, December 10, 1895.

1. **St. Louis School Board.** The nature, powers, and organization of the St. Louis school board, discussed.

2. ———. The "Drabelle law" (R. S. 1889, sec. 8113 and following) has been held a constitutional measure.

3. **St. Louis School Board, Elections Under.** The St. Louis school board has the power to prescribe the time, place, and manner of conducting elections to the board, as given by the charter of 1833, except in the particulars touched by later acts on that topic.

4. **School Board : MANDAMUS.** Where a school board is under a clear statutory duty to order an election of members, it may be required to do so by *mandamus*.

5. **St. Louis Schools : MANDAMUS.** "Citizens, taxpayers, and resident householders" of St. Louis have sufficient interest to maintain an action for such a *mandamus* on a proper showing, it being settled law in Missouri that where the performance of a public duty obviously affects the rights of all citizens any of them may move for a *mandamus* to compel the performance of that duty.

6. **Mandamus.** *Mandamus* sometimes goes to require a judicial officer to render some judgment, even in circumstances where the writ can not properly direct a particular judgment.

7. **Statutes : REPEAL.** A special or local law on one topic is not to be held repealed by a later general law, unless that intent is manifest.

8. St. Louis School Board: ELECTIONS. The election law (1895) for large cities does not deprive the St. Louis school board of the power to conduct elections for members of that body.

9. ——: ——: REGISTRATION OF VOTERS. Registration is a necessary qualification of a voter at a school election in St. Louis; but any alleged imperfections in the existing registry law do not warrant the school board in omitting to hold an election for members pursuant to the terms of the Drabelle law.

10. ——: ——: ——. Under the law of 1895 the election commissioners have the custody of the old registration lists, and have the powers and duties vested in the recorder of voters of St. Louis, when that law took effect.

*Mandamus.*

PEREMPTORY WRIT AWARDED.

"STATE OF MISSOURI.

"Office Board of Election Com-  ⎱
     missioners.—City Hall.     ⎰

ST. LOUIS, Nov. 4, 1895.
"*Hon. Franklin Ferris, City.*

"SIR:—I have the honor to acknowledge receipt of your inquiries concerning registrations and transfers, and in reply beg leave to submit the following:

"First: The number of registrations received for three months prior to the closing of the registration records preceding the school board election of November 1893 was, as shown by the books of this office, eleven hundred and thirty eight (1138). The registration records for this election closed October 31, 1893.

"Second: The number of transfers for three months prior to the closing of the registration records preceding the school board election of November, 1893, was, thirty-two hundred and twelve (3212).

"Third: The number of registrations received for three months prior to the closing of the registration records preceding the school board election of Novem-

ber, 1891, was, ten hundred and six (1006).   The regis-
tration records for this election closed October 24, 1891.

"Fourth.   The number of transfers for three
months prior to the closing of the registration records
preceding the school board election of November, 1891,
was, twenty-nine hundred and sixty-six (2966).

"Fifth:   The number of votes cast at the spring
election of 1895, as shown by the records of this office,
was 55890.

"Sixth:   The registered vote of the spring election
of 1895, as shown by the records of this office, was
ninety-nine thousand five hundred and forty-three
(99543).

"Very respectfully your obedient servant,
           "WM. FLEWELLYN SAUNDERS,
           "Commissioner and Secretary."

*Rowell & Ferriss* for relators.

(1) The board has no discretion to refuse to call
an election.   *First.* The term of office is fixed by law
(sec. 6, p. 2171, R. S. 1889).   *Sansum v. Mercer,* 68
Tex. 488; *Ewing v. Hoblitzelle,* 85 Mo. 76.   *Second.*
The board can not determine the validity of the elec-
tion before it is held.   *Bowers v. Smith,* 111 Mo. 54;
McCrary on Elections, sec. 101; Mechem on Pub. Off.,
sec. 155; *Weil v. Calhoun,* 25 Fed. Rep. 665; *Knox Co.
v. Davis,* 43 Ill. 412.   (2) A valid election can be held
upon the present registration lists.   *First.* History of
election laws.   Const. 1865, art. 2, sec. 4; sec. 18,
Laws, 1866; *State ex rel. v. Brassfield,* 67 Mo. 331;
*State ex rel. v. Cook,* 41 Mo. 593; Const. 1875, art. 8,
secs. 2-5; sec. 999, R. S. 1889; Laws, Extra Session,
1895, secs. 2, 3, 5, 6, 11, 19, 35, 40.   *Second.* School
board election under existing laws not in derogation of
constitutional rights.   Right to vote not a vested one.

*Blair v. Ridgley,* 41 Mo. 178. Legislature has right to pass registration laws which will temporarily deprive voters of the right to vote. Cooley, Const. Lim. [6 Ed.] 200; *Blair v. Ridgley,* 41 Mo. 169; *Ewing v. Hoblitzelle,* 85 Mo. 63; *West v. Ross,* 53 Mo. 350; *State ex rel. v. Cook,* 41 Mo. 593; *County Ct. v. Griswold,* 58 Mo. 175; *Hamilton v. County Court,* 15 Mo. 3; *Talcott v. Philbrick,* 59 Conn. 472; *People v. Board,* 29 N. E. Rep. 329; *People v. Hoffman,* 116 Ill. 587; *Butts v. State,* 31 Kan. 556; *Patterson v. Barlow,* 60 Pa. St. 54. *Third.* The law is within the terms of present constitution. *State v. Frazier,* 78 Mo. 430; *Railroad v. Evans & Howard,* 85 Mo. 307. *Fourth.* Laws valid which close registration before election day. McCrary on Elections, secs. 92, 95, 96; Mechem on Pub. Off., sec. 149; Cooley, Const. Lim. [6 Ed.] p. 756. *Fifth.* The provision for using present registration list is reasonable. (3) Voters may still register under the old law. *First.* The board of election commissioners given the registration lists with power to continue same until 1896. Sec. 2, Laws, Special Session, 1895, p. 7. *Second.* Old law not repealed and not inconsistent with the provisions of new law as far as present registration concerned. (4) Board of election commissioners are not authorized to hold the election.

*Charles B. Stark* for respondents.

(1) The relators, showing that they have no interest in the performance of a duty by a public officer different from or greater than that of all other citizens, can not maintain a *mandamus* proceeding against such officer. R. S. 1889, secs. 630, 637, 1990; *Demarest v. Wickham,* 63 N. Y. 320; *Roosevelt v. Draper,* 23 N. Y. 318; *Doolittle v. Supervisors,* 18 N. Y. 155; *In re Wellington,* 16 Pick. 87; *People v. Inspectors,* 4 Mich.

187; *State v. Kearney*, 25 Neb. 262; *Smith v. Mayor*, 81 Mich. 123; *People v. Regents*, 4 Mich. 98; *People v. Green*, 29 Mich. 121; *People v. Supervisors*, 38 Mich. 421; *People v. Auditor*, 42 Mich. 422. (2) The alternative writ, stating as a conclusion that it was the duty of the respondents to order an election, does not state facts in an issuable form, and hence the writ should be quashed and the peremptory writ denied. *State ex rel. v. Everett*, 52 Mo. 89; *Hamilton v. Dexter*, 89 Mo. 188; *State ex rel. v. Governor*, 39 Mo. 388; 2 Spelling Ex. Rel., sec. 1370, pp. 1117, 1118; *Arberry v. Beavers*, 6 Tex. 457. (3) It appearing from the record that the respondent board at the time of the issuance of the alternative writ had outstanding a duly appointed committee charged with the duty of making all arrangements looking to the holding of an election, this court can not presume that the respondents will fail in the discharge of any duty incumbent on them under the law in the matter of ordering and holding an election. (4) The alternative writ on its face stating that the law and the rules of the respondent board required the holding of an election on a date which is now impossible, and there being no charge of fraud against the respondents, the court can not command it to hold an election, for an election held at a date other than that fixed by law would be a nullity. *State ex rel. v. Jenkins*, 43 Mo. 261; *State ex rel. v. Robinson*, 1 Kan. 17; *State v. Stauffer*, 11 Neb. 173; *State v. Whittemore*, 11 Neb. 175; 2 Spell. Ex Rel., sec. 1443. (5) The demurrer to the return strikes back to the alternative writ, and where the latter fails to suggest sufficient facts to entitle the relators to the relief sought, the peremptory writ will be denied. *State ex rel. v. Newman*, 91 Mo. 445; *Dement v. Bokker*, 19 N. E. Rep. 33. (6) Under the charter of the respondent board, it is given the power "to prescribe the time, place, and manner of

conducting" its elections, and this necessarily implies the right to exercise a discretion and judgment in prescribing or selecting the time. Laws, 1824-1835, p. 399, secs. 3, 4, 6, 7; Laws, 1881, p. 207; R. S. 1889, sec. 8116. See Webster and Worcester's Dictionaries, words, "prescribe," "regulate." (7) The respondents having a discretion in the matter of prescribing the time of holding the election and having taken action, even though they have not taken final action, *mandamus* will not lie to control that discretion. *State ex rel. v. Commissioners*, 8 Nev. 309; *State ex rel. v. Cramer*, 96 Mo. 75; *State ex rel. v. Coleman*, 33 Mo. App. 470; *State ex rel. v. Francis*, 95 Mo. 44; *State ex rel. v. Gregory*, 83 Mo. 123. (8) It is not competent to hold an election testing the right to vote by registration lists which have been closed to the voters for two and one half months. Mo. Const. 1875, art. 8, sec. 2; *Zeiler v. Chapman*, 54 Mo. 502; *State ex rel. v. Frazier*, 98 Mo. 426; *State ex rel. v. Albin*, 44 Mo. 346; McCrary, Elec., secs. 101, 95, 98; Paine's Elec., sec. 95; Cooley, Const. Lim., 781, 775, 602; *Stephens v. Mayor*, 84 Ga. 630; *McDowell v. Construction Co.*, 96 N. C. 514. (9) There can, under the present laws, be no registration of voters at this time. Special Sess. 1895, secs. 1, 3, 4, 5, 6, 19, 20, 21, 35, 100. (10) If the board of election commissioners have power to admit voters to the registration lists, they have, nevertheless, notified the respondents that they will not exercise that power, and hence the respondents are unable to obtain corrected lists, and the court should not grant a *mandamus* against them but leave matters in *statu quo* until such time as the powers of the said board can be defined in a proper proceeding to that end, when the proper parties shall be before the court. 2 Spell. Ex. Rel., sec. 1440; High, Ex. Rem., sec. 9. (11) There appearing to the respondents that a serious doubt existed as to

their ability to hold a valid election on the first Tuesday of November, they properly declined to expend $10,000 of the trust fund in their hands in the doubtful experiment. *State ex rel. v. Buhler*, 90 Mo. 560; *School Dist. v. Wickersham*, 34 Mo. App. 337; *State ex rel. v. Albin*, 44 Mo. 346; 2 Spell. Ex. Rel., secs. 1441, 1443; High, Ex. Rem., sec. 9. (12) It stands admitted in this case that for many years the respondent board, with the consent and acquiescence of its corporators, the people of St. Louis, has so interpreted its charter powers as to give it the discretion to change the date of holding its election from one time to another, and this court ought to accept the same as a practical construction of the charter by those interested therein, and ought to follow it.

BARCLAY, J.—This is an original proceeding to obtain a mandamus against the St. Louis school board, the official title of which is "The Board of President and Directors of the St. Louis public schools." The members of the Board are joined as defendants. The relators are certain citizens and taxpayers of St. Louis. The object of the desired writ is to require defendant to cause an election for members of the said Board to be held in that city.

An alternative writ was issued on representations of the relators. A return thereto has been made by defendants and a demurrer to the return has been argued and submitted.

The controlling facts are admitted, and the issue is one of law.

The St. Louis school Board is a corporation for the purposes of public education. It is invested with the control and management of the interests of the public schools in the city of St. Louis. It was incorporated in 1833 by a special act, Laws, 1833, p. 37; 2

Terr. Laws, p. 399, R. S. 1889, p. 2170, sec. 1. But various amendments to the original charter have been made from time to time, the effect of some of which it will be necessary to consider.

The Board at the present time is entitled to an official membership of twenty-one. Seven members are elected from the city at large, and fourteen from separate districts, each choosing one member. This is ordained by the act of 1887, popularly known as the "Drabelle law." Laws, 1887, p. 272, R. S. 1889, sections 8113 and following.

That act was held to be a constitutional measure, first, by the General Term of the circuit court, city of St. Louis, and afterward by the supreme court in *State ex rel. v. Miller* (1890) 100 Mo. 439 (13 S. W. Rep. 677.)

The act, among other things, declares that the Board first elected thereunder shall divide itself by lot into two groups of eleven and ten members respectively. The term of the first group is fixed at four years, and of the second group at two years, at the outset of the new arrangement; but thereafter the full term of the office of director is to be four years, excepting only where vacancies are filled, or a holding over is necessary until the qualification of a new member. R. S. 1889, sec. 8115, as amended, Laws, 1893, p. 249, sec. 8115.

In accordance with the terms of the law of 1887, an election was held in November, 1891, at which eleven of the present Board were chosen. One of the other group of members (elected in November, 1893) resigned in the early part of 1895, so that the vacancy thereby occasioned is to be filled at the next general school election. Laws, 1893, p. 249, sec. 8115.

The power originally given to the board, "to prescribe the time, place and manner of conducting the

elections of members'' has not been wholly repealed, though modified by subsequent amendments. The Drabelle law, however, undoubtedly limited and modified that power in one respect, important to notice. It fixed the full term of membership at four years, after the short terms expired of those drawn by lot for two years at the beginning of the plan of selection established by that law.

The Board recognized the force of this change by the rules it adopted for its own government, the first of which, concerning ''elections,'' is as follows:

''Rule 1: *Elections—When to be held.* Elections or directors of the Board of President and Directors of the St. Louis Public Schools shall be held biennially in the city at large and in the respective districts, on the first Tuesday in the month of November. Such elections shall be managed and governed according to the provisions of Rule 2.''

In September, 1895, however, the Board, or a majority thereof, after due consideration, decided to hold no election on the first Tuesday of November in 1895. No election was in fact held at that time, and no election has yet been called for 1895. These facts appear from defendants' return, filed in this case after the date appointed for the election in 1895, by the rule above quoted.

The ground on which the Board has concluded to hold no election at the usual time in 1895 is, to state its substance shortly, that the Board is of opinion that it can not obtain complete registration lists for use at such election, on account of the change of law governing the registration of voters in large cities. Laws, 1895, Special Session, pp. 5 to 43.

It is conceded that the Board can obtain the lists as they existed near the close of the month of August,

1895; but the claim is made that, as those lists may be imperfect by reason of omissions of names of voters entitled to registry since that time, no proper election can be held, based upon such registration lists as can now be obtained.

In this state of the case relators insist that the Board should be required to order an election.

1.  If the Board is under a clear statutory duty to have an election, there can be no doubt that mandamus is an appropriate method of requiring the performance of that duty. *State ex rel. v. School Directors* (1881) 74 Mo. 21; *State v. Brown* (1882) 38 Ohio St. 344; *State ex rel. v. Ware* (1886) 13 Ore. 380 (10 Pac. Rep. 885.)

2.  The relators describe themselves as "citizens, taxpayers, and resident householders of the city of St. Louis," but it is insisted for defendants that private persons can not set on foot a proceeding of this nature without at least the sanction of the official representatives of the state or of the locality affected by the application.

On this point the precedents in other jurisdictions are not in accord. It is needless to review them, for in Missouri several cases have dealt with this subject, and the conclusion has been reached that where a public right is involved and the object is to enforce a public duty, the people are regarded as the real moving party; and, in such a case, the relator in mandamus need not show any special or peculiar interest in the result, if the performance of the general public duty obviously affects his rights as a citizen. *State ex rel. v. Railroad* (1885) 86 Mo. 13; *State ex rel. v. Francis* (1888) 95 Mo. 44 (8 S. W. Rep. 1).

We see no reason to depart from that rule; nor do we see anything in the case at bar that prevents its application.

The relators have the right as citizens of the locality to representation in the school Board by members chosen in conformity to the law on the subject. We regard their interest as sufficient to sustain their position as relators under the rulings above cited.

3.   But it is next contended that the Board has a discretion to prescribe the time and manner of conducting school elections, and that that discretion can not be controlled by mandamus.

The Drabelle law repeats in substance the oldest provisions of the charter of the Board on that point. Laws, 1833, p. 38, sec. 4; 2 Terr. Laws p. 400.   But it adds this important modification, namely: "subject to the provisions of this act" (Laws, 1887, p. 273, sec. 4; R. S. 1889, sec. 8116).   That act in effect fixed the term of the directors now in office, who were elected under it in 1891, at four years.   The language of the act itself, as well as that of the amendments thereto in 1889 and 1893, plainly contemplates that there shall be a general school election in St. Louis every two years.

Reading the act as an entirety, there can be no doubt that the legislature intended to limit the power of the Board over the elections of its own members to the extent of requiring elections to be duly held to choose their successors, at some reasonable· time near the close of the terms of office which that act defined.

To that extent the discretion of the. Board as to the time of holding elections is limited, and mandamus may be used to keep that body within the limits of that discretion, just as the writ may be sometimes used to require a judicial officer to render some judgment, even in circumstances where the writ can not properly direct what particular judgment shall be pronounced.

At the present time the terms of office of the directors in question have expired, according to the Drabelle law.   It is hence the duty of the Board under that

law to call an election to choose their successors, unless the objection next discussed affords a reason for not doing so.

4.    The principal ground of resistance to the calling of an election at present to fill the places of the members whose terms have expired is the contention that no sufficient lists of registered voters can be obtained for use at such election, owing to the provisions of the election law of 1895 for large cities.    Laws, 1895, special session, p. 5, and following.

The school Board do not claim that the election commissioners should hold the school election.    On the contrary, the former assert the power (under the particular terms of the laws governing the Board) to prescribe the time, place and manner of conducting such elections.    That power was conferred by the charter of 1833, which is still operative except so far as it is modified by later amendments.    That provision of law being special in its nature should be held yet in force, notwithstanding the very large and comprehensive language of section 16 of the said election law of 1895 (Laws, 1895, special session, p. 12).

A special or local law on one topic is not to be held repealed by a later general law which touches the same topic, unless the intent to repeal the former is manifest. The question on that issue is one of intent, and the intent is to be gathered from the terms and circumstances of the acts themselves, interpreted according to the established canons of construction.

In our opinion the election act of 1895 was not intended to deprive the school Board of the power to conduct elections for members of that body.

Under a statute of 1881 (p. 207) the electors at a school election in St. Louis are those persons "who are, under the laws in force for the time being, qualified voters for city officers in the city."    This definition

would require that a person should be registered as a voter in order to participate in a school election, since that qualification (among others) is essential to the right to vote for city officers under the existing laws, enacted in obedience to a positive command of the constitution.   Const. 1875, art. 8, sec. 5.

It appears from the papers in this case that the school Board has for many years followed the practice of obtaining lists of registered city voters from the registry officers.   Those lists have been used at school elections by virtue of arrangements between the Board and those officers.

Under the act of 1895, governing the custody of the registry lists in St. Louis, the board of election commissioners has control of them as they stood when that act went into effect.   By its terms it is provided that the recorder of voters shall deliver the registry books, etc., to the new election board; and that, "all the powers and duties now vested in, and required of, the recorder of voters shall hereafter (unless otherwise provided in this act) vest in, and be required of, said board of election commissioners."   Laws, 1895, special session, p. 7, sec. 2.

The old registration law, which the act of 1895 was designed to supplant, was certainly operative until the latter part of August, 1895.   The registry lists were at that time the official exhibit of the names of the registered voters.   Those lists (or copies) it appears can be had, if desired by the school Board, for the purpose of an election.

The present case does not require us to express an opinion as to the powers and duties of the new election board touching the continuance of registration for the purposes of school or other elections, held prior to the date at which the general registration, contemplated by that act, will begin.

It is obviously better for us to refrain from determining in advance the legality of any proposed line of action that may be suggested for the holding of the school election.

It is enough now to say that we do not regard the new election law of 1895, referred to, as constituting a sufficient legal obstacle to prevent an election under direction of the Board, in the circumstances here disclosed.

Although the terms of office of directors (and consequently the time for general school elections) are now determined by the Drabelle law, the mode and "manner of conducting" the elections are committed to the school Board's discretion, within the restrictions marked by the law governing the Board. We deem it inappropriate in awarding this mandamus to also direct the course of the Board as to the manner of holding the election, although we conceive it our duty to direct the Board to order an election.

It may possibly be that no question will be raised as to the validity of the course the Board may adopt in conducting the election. Until such a question arises, it is unnecessary to consider its merits or the form it may possibly assume.

Even if it is conceded (as defendants urge) that the effect of the new election law of 1895 is to preclude the entry of transfers, or new registration, of qualified voters, for several months after the law became operative, and until after the school election, that state of the law would not prolong the term of office of any school director, or justify postponing for a year the election of his successor.

It would merely indicate an omission on the part of the legislature to adequately provide for a complete and perfect registration that might be utilized for the purposes of school elections.

If the registration law is, perchance, deficient in this particular, the consequence is not a prolongation of the statutory term of a director's office.

It appears to us that the Board is under the plain duty to proceed at once (as promptly as may be, following the usual course) to cause an election to be held to choose the successors to the twelve directors mentioned.

The demurrer to the return is sustained, and a peremptory mandamus is awarded, conforming to this. opinion. BRACE, C.J., and GANTT, MACFARLANE, SHERWOOD, BURGESS, and ROBINSON, JJ., concur.