THE STATE ex rel. S. J. CLARK et al. v. JOHN P. GORDON, State Auditor.

In Banc, November 17, 1914.

1. **CONSTITUTIONAL LAW: Title: Consolidated School Districts.** The title of an act which is, "An act to provide for the organization of consolidated schools and rural high schools and to provide State-aid for such schools," does not contain two subjects, and does not violate section 28 of article 4 of the Constitution. It but deals with two phases of the same subject, namely, the organization of school districts and State-aid thereto, but in its entirety relates to but one subject.

2. ———: **State-Aid: Appropriation: Aided by Other Acts.** An act which attempts to grant State-aid to consolidated schools and rural high schools and provides that, when certain conditions have been complied with, certain sums of money shall be paid to the district out of the State Treasury, and that the State "shall make adequate appropriations for carrying out" said provisions, must be read in connection with the biennial school appropriation bill; and if, when that is done, both together constitute a "regular appropriation made by law," the act will not be held to be violative of section 43 of article 4 of the Constitution.

3. ———: ———: **Grant of Public Money.** The clause of the Constitution (Sec. 46, art. 4) that prohibits the Legislature from making any grant of public money "to any individuals, municipal or other corporation," does not have any reference to corporations belonging wholly to the State, and does not prohibit the grant of State aid to consolidated schools or rural high schools.

4. ———: ———: ———: **Ordinary School Moneys.** Sections 2 and 6 of article 4 of the Constitution are applicable to the ordinary school funds to be distributed to the ordinary public schools, and not to these funds which the State may specially appropriate to other schools.

5. ———: ———: **General Revenue: Any Public Purpose.** General revenue, collected by the State, by taxation, from all parts thereof, is not the private property of any county or school district, but is the property of the State, and may be appropriated and used for any governmental purpose which the Legislature deems wise; for instance, it may be used in aid of the establishment and maintenance of consolidated schools or rural schools, whose organization the Legislature has authorized.

6. **CONSOLIDATED SCHOOLS: Power to Issue Bonds: Found In Other Acts.** The Act of 1913 providing for the organization of consolidated school districts for elementary and high schools does not in so many words authorize such a district to issue bonds; but the act deals with the general subject of public education, and should be considered a part of the general school laws pertaining to schools of their class, such as Sec. 10777, R. S. 1909, and when that is done such districts have authority to issue bonds for the purposes authorized by those general laws.

## Mandamus.

WRIT ALLOWED.

*Boyd Dudley* and *Bowersock, Hall & Hook* for relators.

(1) The act relates to but one subject, namely, consolidated school districts, and therefore does not violate section 28 of article 4 of the State Constitution. State v. Miller, 45 Mo. 497; Ewing v. Hoblitzelle, 85 Mo. 70; State ex rel. v. Miller, 100 Mo. 444; State v. Morgan, 112 Mo. 212; State ex rel. v. Bronson, 115 Mo. 275; St. Louis v. Weitzel, 130 Mo. 614; State v. Bixman, 162 Mo. 16; Elting v. Hickman, 172 Mo. 251; State v. Doering, 194 Mo. 408; O'Connor v. Transit Co., 198 Mo. 633; State ex rel. v. Delmar Club, 200 Mo. 56; State v. Brodnax, 228 Mo. 53; State ex

rel. v. Williams, 232 Mo. 75.    (2) Sections 7 and 8
of the act, when read in conjunction with the biennial
school appropriation bill, constitute "a regular ap-
propriation made by law," and therefore do not vio-
late section 43 of article 4 of the Constitution.    Camp-
bell v. Board, 115 Ind. 591.    But even if sections 7
and 8 of the act are invalid, the rest of the statute
can stand alone.    State ex rel. v. Taylor, 224 Mo. 474;
State ex rel. v. Gordon, 236 Mo. 170; State ex rel. v.
St. Louis, 241 Mo. 246.    (3)    The act does not con-
stitute a grant of public revenue to any individual
or corporation, and so does not violate section 46
of article 4 of the Constitution.    Sec. 10822, R. S. 1909.
(4)  Consolidated school districts organized under
the act in question have the power to issue bonds.
Sec. 10777, R. S. 1909.    (5)   The officers of the school
district whose bonds are in question, had power to
issue the bonds when they so acted.    There is a strong
presumption that the act is constitutional.    State ex
rel. v. St. Louis, 241 Mo. 247.

*John T. Barker,* Attorney-General, and *Thomas
J. Higgs,* Assistant Attorney-General, for respondent.

(1)   The act in question is in violation of section
28, article 4, of the Constitution, in that the title con-
tains two subjects:  First, the organization of consoli-
dated schools and rural high schools, and, second, the
granting of State aid therefor.   State ex rel. v. Gor-
don, 223 Mo. 17.    (2)   The act in question is in vio-
lation of section 43 of article 4 of the Constitution
of Missouri, in that sections 7 and 8 of said act at-
tempt to grant money as aid to said school districts,
when as a matter of fact there was no appropriation
by the Legislature of such money.   The Legislature
never intended these sections to appropriate any
moneys whatsoever, but the appropriation was to be
made at a separate and distinct time, by a separate

and distinct act. There is no attempt to appropriate or set aside a specific sum or fund from which said State-aid could be paid as provided by paragraph 7 of section 43 of article 4 of the Constitution. State ex rel. v. Henderson, 160 Mo. 213. This court makes a clear distinction between an appropriation and a duty to appropriate. If the appropriation was not made the whole act falls, as the State aid was the inducement for the passage of the act and the formation of the district. State ex rel. v. St. Louis, 241 Mo. 231. (3) The act in question is unconstitutional and in violation of the provisions of section 46 of article 4 and article 9, and more particularly sections 2 and 6 of said article 9 of the Constitution. (4) The act approved March 14, 1913, does not confer upon or give authority to any consolidated school district organized thereunder and in accordance therewith to issue any bonds whatsoever in manner and form as alleged in relators' petition for writ of mandamus.

WOODSON, J.—This is an original proceeding in mandamus, instituted in this court by the relators, the directors of Consolidated School District No. 1 of Daviess county, against John P. Gordon, State Auditor, to compel him to register and certify certain bonds of the district issued by it under section 10777, Revised Statutes 1909.

No question is raised as to the sufficiency of the pleadings, the proper formation of the district, the election of the directors or the regularity of the issuance of the bonds.

The sole questions here presented by respondent challenge the constitutionality of the Act of the Legislature of 1913, Laws 1913, pp. 721 to 725, under which the school district was organized.

Said act provides for the organization of consolidated schools and rural high schools, and provides State aid for such schools, with an emergency clause.

The act consists of nine sections and is found in Laws 1913, on pages 721 to 725, and it reads as follows:

"Section 1.  *Consolidated district for elementary and high school may be formed.*—The qualified voters of any community in Missouri may organize a consolidated school district for the purpose of maintaining both elementary schools and a high school as hereinafter provided.  When such new district is formed it shall be known as consolidated district No. —— of —— county, and all the laws applicable to the organization and government of town and city school districts, as provided in article 4, chapter 106, of the Revised Statutes of Missouri, 1909, shall be applicable to districts organized under the provisions of this act.

"Sec. 2.  *Consolidated district—area and enumeration of.*—No consolidated district shall be formed under the provisions of this act unless it contains an area of at least twelve square miles or has an enumeration of at least two hundred children of school age:  Provided, that no district formed under the provisions of this act shall include within its territory any town or city district that at the time of the formation of said consolidated district has, by the last enumeration, two hundred children of school age.

"Sec. 3.  *Petition to form consolidated district filed with whom—duties of county school superintendent—meeting—organization of.*—When the resident citizens of any community desire to form a consolidated district, a petition signed by at least twenty-five qualified voters of said community shall be filed with the county superintendent of public schools.  On receipt of said petition, it shall be the duty of the county superintendent to visit said community and investigate the needs of the community and determine the exact boundaries of the proposed consolidated district.  In determining these boundaries, he shall so locate the boundary lines as will, in

his judgment, form the best possible consolidated district, having due regard also to the welfare of adjoining districts. The county superintendent of schools shall call a special meeting of all the qualified voters of the proposed consolidated district for considering the question of consolidation. He shall make this call by posting within the proposed district ten notices in public places, stating the place, time and purpose of such meeting. At least fifteen days' notice shall be given and the meeting shall commence at two o'clock p. m. on the date set. The county superintendent shall also post within said proposed district five plats of the proposed consolidated district at least fifteen days prior to the date of the special meeting. These plats and notices shall be posted within thirty days after the filing of the petition. The county superintendent shall file a copy of the petition and of the plat with the county clerk and shall send or take one plat to the special meeting. The special meeting shall be called to order by the county superintendent of schools or some one deputized by him to call said meeting to order. The meeting shall then elect a chairman and a secretary and proceed in accordance with section 10865, Revised Statutes 1909. The proceedings of this meeting shall be certified by the chairman and the secretary to the county clerk or clerks, and also to the county superintendent or superintendents of schools of all the counties affected. If the proposed consolidated district includes territory lying in two or more counties, the petition herein provided for shall be filed with the county superintendent of that county in which the majority of the petitioners reside. The county superintendent shall proceed as above set forth, and in addition shall file a copy of the petition and of the plat with the county clerk of each county from which territory is proposed to be taken.

"Sec. 4. *Transportation—may be voted on.*—The question of transportation of pupils may be voted upon at the special meeting above provided for, if notice is given that such a vote will be taken. If transportation is not provided for in any school district formed under the provisions of this act, it shall then be the duty of the board of directors to maintain an elementary school within two and one-half miles by the nearest traveled road of the home of every child of school age within said school district: Provided further, that if transportation is not provided for, any consolidated district may, by a majority vote at any annual or special meeting, decide to have all the seventh grade and the eighth grade work done at the central high school building, provided fifteen days' notice has been given that such vote will be taken.. Such seventh and eighth grade work at the central school may be discontinued at any time by a majority vote taken at any annual or special meeting.

"Sec. 5. *Parts of districts remaining after consolidation—procedure.*—Whenever, by reason of the formation of any consolidated school district, a portion of the territory of any school district has been incorporated in the consolidated district, the inhabitants of the remaining parts of the districts shall proceed in accordance with section 10882, providing for the annexation to city school districts, and the consolidated district shall be governed by the same provisions as govern city school districts in such cases. The inhabitants of the remaining parts of the districts may also annex themselves to any other adjoining district or districts by filing a petition asking to be so annexed with the clerk or clerks of the district or districts to which they desire to be annexed, and by also filing a copy of all such petitions with the clerk of the county court.

"Sec. 6. *Settlement of property—original districts to continue—how long.*—Whenever any consoli-

dated district is organized under the provisions of this act, the original districts shall continue until June 30th following the organization of said consolidated district, and at that time all the property, money on hand, books and papers of the school districts whose schoolhouse sites are included within said consolidated district shall, by the officers of aforesaid districts, be turned over to the board of directors of the consolidated district, and also all bonds outstanding against the aforesaid districts shall become debts against the consolidated district.  The division of property and money on hand, in case school districts are divided by the formation of any consolidated district, shall be governed by sections 10839 and 10840.

"Sec. 7.  *State aid—when granted—how.*—Whenever a district organized under the provisions of this act has secured a site of not less than five acres for the central high school building of said district and has erected thereon a school building, suitable for a central school and containing one large assembly room for the meeting of the citizens of the district and has installed a modern system of heating and ventilating, the State shall pay one-fourth of the cost of said building and equipment, provided the amount thus paid by the State shall not exceed two thousand dollars ($2000) for any one district.  The State of Missouri shall, out of the general revenue fund of the State, make adequate appropriation for carrying out the provisions of this section, and the money due any district shall be remitted by the Auditor to the county treasurer of the proper county on receipt of a certificate from the State Superintendent of Public Schools stating that the conditions herein prescribed have been complied with.

"Sec. 8.  *Special State aid granted—when—how.*—When a consolidated district has been organized as herein provided and has provided adequate buildings for school purposes, the State shall grant a special aid

of twenty-five dollars ($25) per year for each square mile or fraction thereof in the area of said district: Provided, the district maintains an approved high school of at least the third class and gives an approved course of at least one year in agriculture; and provided further, that no district shall receive more than eight hundred dollars per year under the provisions of this section. The State of Missouri shall, out of the general revenue fund of the State, make adequate appropriation for carrying out the provisions of this section. The money herein provided shall become due on June 30th of each year, and the district clerk shall, on or before June 30th, make application to the county clerk for the aid due his district and the county clerk shall certify these applications to the State Superintendent of Public Schools, who shall approve them and certify to the State Auditor the amount due each district under the provisions of this act. The State Auditor shall draw his warrant on the State Treasurer for the said amount and remit to the treasurer of the proper county."

Section 9 is the emergency clause and need not be set forth.

I. The first objection urged against the constitutionality of the act under consideration relates to its title. It is claimed that it violates section 28 of article 4 of the Constitution of 1875, in this "that the title contains two subjects: First, the organization of consolidated schools and rural high schools; and, second, the granting of State aid thereto."

This objection is without merit. The act relates to but one subject, namely, consolidated and rural high schools. While it deals with two phases of the same subject, the organization of the districts and their financial aid by the State, yet that fact constitutes no constitutional objection to the act, when it as an entirety relates to but one subject.

This has been so frequently declared by this court it would be a useless waste of time and labor to more than briefly refer to some of those cases.

In Ewing v. Hoblitzelle, 85 Mo. 64, l. c. 71, this court said: ''Where all the provisions of a statute fairly relate to the same subject, have a natural connection with it, are the incidents or means of accomplishing it, then the subject is single, and if it is sufficiently expressed in the title, the statute is valid.''

To the same effect are the following cases: State ex rel. v. Vandiver, 222 Mo. 206, l. c. 219; State v. Miller, 45 Mo. 495, 497; State ex rel. v. Miller, 100 Mo. 439, 444; State v. Morgan, 112 Mo. 202, 212; State ex rel. v. Bronson, 115 Mo. 271, 275; St. Louis v. Weitzel, 130 Mo. 600, 614; State v. Bixman, 162 Mo. 1, 16; Elting v. Hickman, 172 Mo. 237, 251; State v. Doerring, 194 Mo. 398, 408; O'Connor v. St. Louis Transit Co., 198 Mo. 622, 633; State ex inf. v. Jockey Club, 200 Mo. 34, 56; State v. Brodnax, 228 Mo. 25, 53; State ex rel. v. Williams, 232 Mo. 56, 75.

This question is therefore ruled against the respondent.

II. The second objection made to the validity of the act is stated in this language: ''The act in question is in violation of section 43 of article 4 of the Constitution of the State of Missouri, in that sections 7 and 8 of said act attempt to grant money as aid to said school districts, when as a matter of fact there was no appropriation by the Legislature of such money.''

This objection is also untenable. For when we read said sections 7 and 8 in connection with the biennial school appropriation bill, which we must do, it constitutes ''a regular appropriation made by law,'' and does not therefore do violence to said section 43 of the Constitution.

This was the view the Supreme Court of Indiana took of a similar statute in the case of Campbell v. Board of Commissioners, 115 Ind. 591.    There the Legislature appropriated a certain fund for the purpose of erecting a monument to the memory of the soldiers and sailors of that State.   A question arose as to the right of the commission to use the money so appropriated for the monument, in the payment of the incidental expenses connected therewith.   The court held that the entire appropriation had to be used on the monument proper, and that by reading that statute in conjunction with the general revenue laws of the State, the Auditor was authorized to draw his warrant against the general funds, with which to pay said incidental expenses.

By parity of reasoning we must read said sections 7 and 8 in connection with said general appropriation bill for school purposes; and by so doing, we are of the opinion that the proper appropriation was duly made.

We, therefore, rule this objection against the respondent.

III.   It is next contended that said act is unconstitutional because it violates "section 46 of article 4 and article 11 and more particularly sections 2 and 6 of said article 11 of the Constitution."

Section 46 prohibits the Legislature from making any grant, etc., "to any individual, association of individuals, municipal or other corporation."   This section has no reference to corporations *belonging* wholly to the State, organized wholly for governmental purposes under public laws and governed by officers duly elected or appointed according thereto; for instance, the various eleemosynary institutions of the State, State University, normal schools, public schools, drainage and road districts, etc.   This has

261Mo41

been expressly so held by this court in the case of State ex rel. v. Taylor, 224 Mo. 393, l. c. 468.

Sections 2 and 6 of said article are applicable to the ordinary school funds to be disbursed to the ordinary public schools of the State, and not to those funds which the State specially appropriates to the University, normal schools and those of the character here under consideration; otherwise, State aid could not be rendered to the University or to the various normal schools of the State. This contention is without merit.

It has been further suggested in this connection that the general revenues of the State, collected, as they are, from all parts thereof, cannot lawfully be expended for the purposes of purchasing grounds, constructing buildings and paying teachers in the various local districts formed or to be formed under the act in question. In my opinion this suggestion is also without merit, for the reason that the State, at the present time and for many years previous, has been collecting taxes from all over the State and applying them to the uses of the local district schools, normal schools and the University. The two latter are supported solely by taxes so collected, and the former very largely from the same source, amounting to many hundreds of thousands of dollars. This is upon the theory that money acquired by the State or county by taxation is not the private property of any county or school district, but is the property of the State, which may be used for any public purpose the Legislature may deem wise.

In discussing this question this court, in Banc, unanimously held in the case of State ex rel. v. Taylor, 224 Mo. 393, l. c. 468, that:

"And the statute authorizing the county to pay out of its revenues claims of this character against such district does no violence to any constitutional provision to which our attention has been called.

"It is well settled law, that money acquired by a county from the taxation of its citizens is not the private property of the county, and an act of the Legislature directing such county to appropriate a portion of its funds so acquired to pay a part of the public expenses of a city within its limits is not an appropriation of public funds to private use, and is not the taking of private property for the public use without just compensation. [State ex rel. v. St. Louis County, 34 Mo. 546.]

"And in the case of the City of Hannibal v. Marion County, 69 Mo. 571, this court held that the Legislature had the authority to say what shall be done with the taxes levied and collected from any county. There an act of the Legislature required the county to pay to the city out of the general revenue of the county the sum collected from the city for bridge tax and poll tax, and was not unconstitutional.

"The rule announced in these cases clearly applies to the facts of this case. This district is as much a public corporation as were the cities of St. Louis and Hannibal; and the taxes collected by Chariton county were no more the private property of the county in this case than were the revenues involved in those cases the private property of Marion and St. Louis counties.

"If the Legislature had the authority to apply the revenues of those counties for the purposes therein stated, then for stronger reasons it had the authority to apply the revenues of Chariton county for the purposes herein stated, because the drainage district in question is not independent of the county, but, upon the other hand, it owes its being to and is subject to its authority and control in the same sense in which townships of a county are subject to its control. It does not even have the independent government like townships have under the township organization.

The county court administers its entire affairs, and the county clerk keeps its records.

"The cases before cited and the views expressed are not in conflict with section 46 of article 4 of the Constitution, as contended for by relators. That section reads as follows: 'The General Assembly shall have no power to make any grant, or to authorize the making of any grant of public money or thing of value to any individual, association of individuals, municipal or other corporation whatsoever: Provided, that this shall not be so construed as to prevent the grant of aid in a case of public calamity.'

"That section of the Constitution does not prohibit the Legislature from making use of an individual or a corporation as a means through which it may apply appropriations to lawful purposes.

"In the case of State ex rel. v. Seibert, 123 Mo. 424, it was held that a private corporation or individual may be the recipient of funds raised by taxation provided the use to which they are to be devoted is a public one. And in the case of State ex rel. v. City of St. Louis, 174 Mo. 125, it was also held that an ordinance of the city appropriating the expenses that a policeman incurred while in the performance of his duty as such officer, in removing a nuisance from a public street, as expressly required by law, was not a donation of public money to an individual in violation of said constitutional provision.

"While this court in the case of State ex rel. v. County Court, 142 Mo. 575, held that an act of the Legislature transferring county taxes to the town of Kirkwood for street purposes was a violation of said constitutional provision and void for that reason, yet that opinion was based upon the fact that the county in that case had no concern or control whatever over the streets of the town. In that case the streets were vested in the town, and its charter gave it the exclusive jurisdiction of and control over its streets.

"But not so with these drain ditches. They are acquired by donation, purchase or condemnation, and the titles there are vested either in the drainage district or the county for the use of the public, and under the exclusive charge and control of the county court. The title to the same is not vested in the landowners of the district. That is made clear by the fact that they may be and often are acquired by condemnation. The landowners by virtue of their ownership of the lands embraced within the district have no authority over the ditches proper. It is true the Drainage Act imposes the duty upon the respective landowners to keep the ditch clear of all obstructions where it passes along or through their lands, but that is not because they have any interest in or authority as individuals over the ditch; but being public aqueducts, the Legislature, through the exercise of the police power, imposes the duty upon them to keep them free from obstructions upon the same principle and authority that it compels the property-owner to keep the sidewalk in front of his property free from snow and other obstructions.

"Nor has the drainage district itself any authority or control over the ditches, nor does the law require it to keep the ditches free from obstructions. That is obvious from the fact that it has no officers or means by which it could do so. It is without autonomy, and, as before stated, the exclusive regulation and control over these ditches is vested in the county court, and the Drainage Act imposes the duty upon it to see that they are constructed, maintained and kept free from all obstructions.

"We have discussed these matters somewhat extensively for the prupose of showing that they are not only public corporations, but that they are under the sole and exclusive charge and control of the county court, and that the money the court is au-

thorized to expend by said sections 8299 and 8306 is expended for a public and not a private use.

"The very case cited and relied upon by counsel for relator, State ex rel. v. County Court, supra, recognizes the very distinction we have here drawn, and in express terms distinguishes that case from the cases of State ex rel. v. Seibert, and City of Hannibal v. County of Marion, supra, which we have before cited and discussed."

From these observations it is seen that so long as the revenues expended are used for public purposes, that is, for purposes which are governmental in character, the Legislature has the constitutional authority to authorize their expenditure, whether they are expended through the agency of a purely public corporation or a municipal corporation, which acts in a dual capacity—for the public proper, and for itself in its private capacity. These views are firmly supported by numerous authorities in this and other States.

IV. It is finally insisted that the Act of 1913 does not confer authority upon consolidated school districts organized thereunder to issue any bonds whatsoever.

Literally speaking this insistence is true, but when we take into consideration the fact that the Legislature was dealing with the general education of its citizens and authorized this higher class of instruction, it is apparent that it intended that the general school laws of the State, in so far as applicable, should be read in connection with this class of schools, in order to carry out the general design and intention of the legislative body.

The Legislature knew that this class of schools had no school property—lands, buildings or other instrumentalities—with which to carry on the school work, no more than the ordinary public school has when first organized, without resort should be had

to borrowing money for those purposes. That being true we must look at the general school laws of the State regarding this subject, and read it in connection with this incomplete act; and by so doing, we find that section 10777, Revised Statutes 1909, provides for the issuance of bonds for the purposes for which those in controversy were issued.

In the discussion of the subject of the construction of statutes *in pari materia* this court in the case of Sales v. Barber Asphalt Paving Co., 166 Mo. l. c. 677 to 678, held, and quoted with approval from Mr. Sutherland, the following language:

" 'All consistent statutes relating to the same subject, and hence briefly called statutes *in pari materia*, are treated prospectively and construed together as though they constituted one act. This is true whether the acts relating to the same subject were passed at different dates, separated by long or short intervals, at the same session or on the same day.' [Sutherland, Stat. Construct., sec. 283.]

"And 'A statute must be construed with reference to the system of which it forms a part. And statutes on cognate subjects may be referred to, though not strictly *in pari materia*.' [Id., sec. 284.]

"Further on, the learned author discussing and discoursing upon the same subject, says: 'Where enactments separately made are read *in pari materia*, they are treated as having formed, in the minds of the enacting body, parts of a connected whole, though considered by such a body at different dates, and under distinct and varied aspects of the common subject. Such a principle is in harmony with the actual practice of legislative bodies, and is essential to give unity to the laws, and connect them in a symmetrical system. Such statutes are taken together and construed as one system, and the object is to carry into effect the intention. It is to be inferred that a code of statutes relating to one subject was governed by one

spirit and policy, and was intended to be consistent and harmonious in its several parts and provisions. For the purpose of learning the intention, all statutes relating to the same subject are to be compared, and so far as still in force brought into harmony, if possible, by interpretation, though they may not refer to each other even after some of them have expired or been repealed.' [Ib., sec. 288.]''

This language was also approved by this court in the cases of State ex rel. v. Standard Oil Co., 218 Mo. l. c. 355, and State ex rel. v. Patterson, 207 Mo. l. c. 144.

In the case of State ex inf. v. Amick, 247 Mo. 271, l. c. 290, this court in discussing the same subject quoted approvingly from the case of Humphries v. Davis, 100 Ind. l. c. 284, the following:

"In the case of Humphries v. Davis, 100 Ind. l. c. 284, the Supreme Court of Indiana, speaking through ELLIOTT, J., said: 'A statute is not to be construed as if it stood solitary and alone, complete and perfect in itself, and isolated from all other laws. It is not to be expected that a statute which takes its place in a general system of jurisprudence shall be so perfect as to require no support from the rules and statutes of the system of which it becomes a part, or so clear in all its terms as to furnish in itself all the light needed for its construction. It is proper to look at other statutes, to the rules of the common law, to the sources from which the statute was derived, to the general principles of equity, to the object of the statute, and to the condition of affairs existing when the statute was adopted. [Citing authorities.] . . . ''Construction has ever been a potent agency in harmonizing the operation of statutes with equity and justice.'' Statutes are to be so construed as to make the law one uniform system, not a collection of divers and disjointed fragments. When this principle of construction is adopted, "an enactment of to-day has

the benefit of judicial renderings extending back through centuries of past legislation.'' [Bishop, Written Laws, sec. 242b.] ''A statute,'' says the author just referred to, ''must be construed equally by itself and by the rest of the law. The mind of the interpreter, if narrow, will stumble.'' ''The completed doctrine resulting from a bringing together of its parts, is, that all laws, written and unwritten, of whatever sorts and at whatever different dates established, are to be construed together, contracting, expanding, limiting and extending one another into one system of jurisprudence as nearly harmonious and rounded as it can be made without violating unyielding written or unwritten terms.'' [Bishop, Written Laws, secs. 113a, 86.]' ''

This act is progressive and in keeping with the forward movement of the State and country at large— bringing home better schools and higher grades of instruction, which the ordinary public schools do not teach, and are incapable of teaching on account of the lack of means to construct appropriate buildings and to employ competent teachers. By this scheme of the Legislature thousands of our children can and will be instructed in the higher branches of education not taught in the ordinary school, who are unable to go to city high schools, colleges and universities away from home.

The design of the Legislature is good and wise, and before the act conferring this beneficence upon the youth of the country should be declared invalid, the reasons therefor should be so clear and unanswerable that no reasonable doubt should exist as to its unconstitutionality; and after a careful reading of the briefs of the respective parties and having investigated the authorities cited, we are of the opinion that no such reason has been pointed out.

But upon the contrary we are firmly of the opinion that the act is valid; and that the peremptory writ of mandamus prayed for should issue.

It is so ordered.

All concur, except *Lamm, C. J.,* not sitting.