THE STATE EX REL. S. A. WHITEHEAD ET AL. v. G. A. WENOM ET AL., Appellants.—32 S. W. (2d) 159.

Division Two, October 13, 1930.

*R. E. Kleinschmidt* for appellants.

354

*Clyde Williams* for respondents.

COOLEY, C.—Mandamus begun and tried in the Circuit Court of Jefferson County. The trial court, upon the filing of the petition, issued an alternative writ, which was made permanent upon final hearing, and five of the respondents below appealed. Relators are residents and taxpayers of Consolidated School District No. 1 of Jefferson County, and at the time of the institution and trial of this action the six men who were respondents below constituted the board of directors of said district. One of the directors made no return to the alternative writ and did not join in the appeal.

On March 18, 1922, soon after the organization of the consolidated district, a special election was held therein, pursuant to call of the then board of directors, at which it was voted to authorize the board to issue bonds in the sum of $40,000 to build a "central school building" and to purchase a school site, and by vote of the electors at the same election a specified site was selected embracing about five and one-third acres. The bonds have not been issued. Shortly following the special election there was some litigation involving the organization of the district and an attempt to disorganize, which may account for the fact that the bonds were not issued immediately after the election. This suit was filed in December, 1926. Meantime, as we infer from the evidence, the personnel of the board had changed and the present board refused to issue the bonds. The suit is to compel the board to issue the $40,000 in bonds and to acquire the site selected at the special election and to erect thereon a central *high school* building. The organization of the district and the regularity of the proceedings in calling and holding the special election are not here questioned.

Relators' petition seems to proceed upon the theory that when the bonds were voted it became the imperative duty of the board to issue the bonds, to acquire the site selected by the voters and to erect thereon a high school building. It alleges that upon the bonds being voted the board "was authorized and directed" to issue the bonds for the purpose of acquiring the site and erecting thereon a high school building; that the district has no central high school building and no site on which to build one, and that the directors have "arbitrarily, wilfully and capriciously and in violation of their duty," refused to issue the bonds and purchase the site.

Following the prayer of the petition the alternative writ commands: That the directors purchase the school house site described in the petition (the one selected by the voters) or if they cannot agree with the owners upon a price that they procure it by condemnation; that they issue, negotiate and sell the bonds in the sum of $40,000 and receive the proceeds thereof; and that they use said proceeds or sufficient thereof to acquire said site and erect thereon a central high school building; or that they show cause, etc.

The five directors who made returns alleged therein in substance that the vote on the questions of issuing bonds and purchasing the site referred to was of an advisory nature and not binding on these directors; that in the exercise of their lawful discretion they were of the honest opinion that there was at the then present time no necessity that the bonds be issued or that the particular land mentioned in the petition and alternative writ be acquired; that conditions in the district had changed since March 18, 1922; that there were only about twenty-five pupils in the district ready for high

school, and that they, the directors, were and had been providing, by renting, a suitable building sufficient for the needs of the district and maintaining therein a first-class high school; that the issuance of the bonds and purchase of said site was unnecessary and impracticable at that time; that it was not then the desire of a two-thirds majority. or of any majority of the voters of said district that the bonds be issued or that said particular site be purchased. They specifically denied that they had arbitrarily or capriciously refused to issue the bonds and purchase the site, but averred their refusal was ''due to an honest exercise of their discretionary powers, with due regard to the needs and requirements of the school children and the rights and desires of a majority of the taxpayers of said district and because the buildings they now have are amply sufficient to maintain an accredited high school, together with the several elementary or grade schools, in said district.''

Relators thereupon filed a motion for judgment on the pleadings, which was overruled, and the cause went to trial without any reply being filed by relators.

At the trial it was formally admitted that the election authorizing the bond issue and ''for the selecting of a school site for the central school building'' was regularly and legally held, and that the assessed valuation of property in the district was over one million dollars, whereupon relators rested. Appellants testified in their own behalf. Their testimony was in substance and to the effect that the reason they had not issued the bonds or purchased the site mentioned was that they did not believe the conditions existing at the time justified their doing so, and that the then needs of the district did not require or justify it. They testified further that they had talked with a majority of the taxpayers of the district and nearly all were opposed to the issuance of the bonds and the purchase of that site; that sentiment in the district had changed and the then prevailing sentiment was against the issuance of the bonds at that time; that the site in question was not suitable, part of it being swampy, and that it would require a good deal of grading; that there were not to exceed thirty-five or forty pupils in the district eligible for high school, of whom only about twenty-five attended the high school that was being maintained; that they were and had been maintaining a first-class high school in a rented building, giving the entire four years' courses of study, which had been approved by the state authorities and which was ample to meet the present needs of the district.

There was some evidence tending to show that at the various school elections since March 18, 1922, those opposed to issuance of the bonds had nominated two candidates for directors and those in favor thereof had nominated two, and that that question was the determining factor in the elections. While it cannot be said that

the evidence clearly showed such to have been the fact, it is true that at the time suit was brought only one of the six then directors favored issuing the bonds and he not very strongly.

In rebuttal relators offered three witnesses. One, a relator, testified that he had talked with "some of the people up there" and he was of the opinion that sentiment regarding the bond issue had not changed. He admitted that for the last preceding four years a first-class high school had been maintained in the district. Another, the non-appealing director, thought "conditions" had not substantially changed since March, 1922; that the site in question, while a portion of it was "kind of wet" and it would need grading, was a suitable site; that he filed no return because he thought the bonds should be issued. The third witness, a relator, testified that the proposed site would require some grading, but thought it a suitable site; that he thought the sentiment of the people was that "they want a school there," though he did not say he had talked with anyone about it since the vote was taken. There was no attempt to controvert the testimony of appellants that they were and had been maintaining a first-class accredited high school and that the building rented for the purpose was sufficient for the present needs of the district, and no such claim was made by relators in their petition. Neither was it contended or shown that any pupil eligible to attend high school refrained from attending because of the location or character of the building supplied by the directors.

The court made no finding of facts other than a general finding for the relators "and that the relators are entitled to a permanent writ of mandamus." The peremptory writ granted commands the directors and their successors in office that they issue $40,000 of bonds of the district and sell the same *or sufficient thereof* to acquire the school house site described in the petition *or some other suitable school house site* and to erect thereon a central high school building; and that they acquire the site and erect the building.

I. The peremptory writ does not conform to the alternative writ in at least two substantial respects. The alternative writ, following the allegations and prayer of relators' petition, orders (a) that bonds in the entire sum of $40,000 authorized be issued and sold, and (b) that the particular site described in the petition be acquired; while the peremptory writ commands (a) that only so much of the $40,000 be issued and sold as will be sufficient to procure a site and erect a building, and (b) that the site designated or some other suitable site be acquired. Of (a) it is true that the alternative writ *ordered* that only so much of the proceeds of sale of bonds be used as necessary to acquire the designated site and erect a high school building,

but it commanded that bonds in the sum of forty thousand dollars be issued and that the directors "negotiate and sell *said* bonds . . . and receive the proceeds therefrom . . ." (Italics ours.)

It was held in several early cases in this State that in mandamus proceedings the peremptory writ must conform strictly to the alternative writ and that if relator did not show himself entitled to performance of all of the things specified he could get no relief. [State ex rel. v. K. C. St. J. & C. B. Railroad Co., 77 Mo. 143, 147; State ex rel. v. Finley, 74 Mo. App. 213; School Dist. v. Lauderbaugh, 80 Mo. 190; State ex rel. v. Hudson et al., 226 Mo. 239, 264, 126 S. W. 733.] It is now held that "the modern practice is more liberal and (to further justice) amendments are now allowed to these writs." [State ex rel. v. Hudson, supra.] But no amendment was made nor was there an offer to amend in this case, and under the pleadings as made up by the alternative writ and the returns thereto the peremptory writ issued cannot be sustained. It commands other and different relief from that sought by relators' petition and ordered in the alternative writ. [See State ex rel. v. Hudson, supra; State ex rel. v. Adair County Court, 177 Mo. App. 12, 163 S. W. 279; State ex rel. v. Doe Run Lead Co. (Mo. App.), 178 S. W. 298, 300.]

II. If the foregoing were the only infirmity in relators' case we might, as was suggested in State ex rel. v. Hudson, supra, reverse and remand so ·as to permit amendment of the petition and alternative writ should such procedure be deemed advisable. But we are of the opinion that there was no case made by pleading or proof that entitles relators to any part of the relief sought.

As said above, relators proceed upon the theory that when the voters of the district voted to authorize the loan it thereupon became the imperative duty of the directors to issue the bonds, acquire the site selected and erect the building, a positive mandate that left nothing to their discretion except details of carrying it out; and that if they did have a discretion it was not honestly exercised.

The statute pursuant to which the special election was held, Section 11127, Revised Statutes 1919, provides that for the purpose of purchasing school house sites and erecting and furnishing buildings the board of directors shall be authorized to borrow money and issue bonds for the payment thereof in the manner therein provided. It then directs how the election shall be called and conducted and provides that if two-thirds of the votes cast on the proposition are for the loan "the district board shall be vested with the power to borrow money, in the name of the district, to the amount and for the purpose specified in the notices . . ." The further provisions of that section are not pertinent to the question under dis-

cussion. The statutory provisions specifically applying to consolidated school districts do not in terms provide for borrowing money and issuing bonds, but it has been held that they may do so under said Section 11127, which applies to schools generally. [State ex rel. v. Gordon, 261 Mo. 631, 170 S. W. 892.] It will be observed that Section 11127 is not mandatory in terms. It does not say that the board of directors *shall* borrow the money or that it shall be their duty to do so. We find no statutory provision using mandatory langauge on this subject. Relators cite State ex rel. v. School Directors of Springfield, 74 Mo. 21; State ex rel. v. St. Louis School Board, 131 Mo. 505, 33 S. W. 3; State ex rel. v. Cartwright, 122 Mo. App. 257, 99 S. W. 48. The first was mandamus to compel the directors to cause to be used certain text-books which had been duly adopted by the authorities having the right and duty so to do. The law provided that when uniform text-books had been so selected "thereafter as speedily as practicable, the books used in the schools shall be made to conform to the list adopted . . ." It was held that that provision of the statute made it the absolute duty of the directors to introduce the books so adopted, which duty was to be performed, not when they thought best, but as the statute commanded, as speedily as practicable, and that mandamus would lie to compel such action.

State ex rel. v. St. Louis School Board, supra, was mandamus to compel the school board to hold an election to choose successors to those whose terms were about to expire. It was held that the board was under a clear statutory duty to have an election and that mandamus was an appropriate method of requiring performance of the duty.

In the Cartwright case mandamus was held available to compel a school board to establish a separate school for colored children. The statute provided that when the last preceding school enumeration showed fifteen or more colored children of school age in the district the school board "shall be and they are hereby authorized *and required* to establish and maintain" such separate school. (Italics ours.)

These cases, as well as those cited from other jurisdictions proceed upon the well recognized principle that where there is an absolute duty or mandatory requirement imposed by statute those upon whom it is imposed may be compelled by mandamus to perform it. But does that principle apply here? Concededly mandamus will not lie to compel something the doing of which is left to the discretion of the officer or person charged with responsibility in the premises.

As to the location of the school site, there can be no question but that it is left to the discretion of the school board in consolidated districts. In common school districts it is to be determined by the

voters. [Sec. 11210, R. S. 1919.] Consolidated school districts are governed by the laws applicable to the government of town and city districts (Sec. 11257, R. S. 1919), and it has been correctly held by this court that in town and city districts the statute vests in the directors "full and complete discretion as to the location of the school houses." [State ex rel. v. Jones, 155 Mo. 570, 576, 56 S. W. 307.] See also Hart et al. v. Board of Education of Nevada Sch. Dist., 299 Mo. 36, 252 S. W. 441; Velton v. School Dist., 6 S. W. (2d) 652. So much of the alternative writ, therefore, as sought to compel the board to acquire the particular site designated was unauthorized.

Nor do we think the facts pleaded and proved authorized a peremptory order directing issuance and sale of the bonds and the erection of a high school building. One fact that we think worthy of notice is that the loan was by the voters authorized "for the erection of a *central school building* and the purchase of a *school site*." (Italics ours.) The proposition voted on was not limited to the purchase of a site and the erection of a building for high school purposes alone. The law governing consolidated districts seems to contemplate that they may have a central building for the accommodation of both elementary, or grade, pupils and high school pupils and arrange for transportation of the former. The testimony of one of the appellants indicates that he so understood the purpose of the proposition voted on. If such was the purpose the board should not be compelled to borrow and expend the money for a building sufficient only to accommodate the high school pupils.

However that may be, there is another consideration that in our judgment precludes the relief sought in this case. Conceding that when funds are provided or available the duty devolves upon the board to establish and maintain a high school, it stands admitted that such duty is being performed, except that such school is not being maintained in a building owned by the district. It is not shown nor claimed that any pupil or taxpayer of the district is suffering deprivation or injury, except that it is intimated that there are no playgrounds in connection with the building now used, and even that is not put forward as a ground for the relief sought.

The vote, which relators say was a *direction* to the board, purported to do no more than the statute requiring it provides, viz., confer authority upon the board to borrow the money and issue the bonds. If a mandatory duty to borrow and use the money for the purpose for which the vote authorized it was thereby created, that mandate must be found in the statute. The terms of the latter, as we have seen, are permissive rather than mandatory. If the Legislature intended to make the duty imperative upon grant of the power it would have been an easy matter to have inserted in the statute words indicating such intent, as in the statutes under consideration

in State ex rel. v. School Dirs. of Springfield, supra; State ex rel. v. Cartwright, supra, and kindred cases. In the matter of selecting sites and providing buildings and facilities for schools much is necessarily left and may well be left to the sound judgment and discretion of the school board, the members of which may be presumed to have at heart the welfare of the children as well as the financial interests of the district. The personnel of a majority of the board can be changed by the voters in two annual elections. The Legislature evidently deemed it unnecessary to *command* them to take action in such matters when thereto authorized. That view of the statute seems to have been entertained by this court in Hart v. Board of Education, supra, wherein it is said, 252 S. W. l. c. 442, 443:

"Under the statutes of this State (Secs. 11127, 11134 and 11135, R. S. 1919), the school boards, and they alone, are entrusted with the duty of providing and maintaining school facilities, including sites, schoolhouses and furnishings. The methods and means to be employed in the discharge of these functions are committed wholly to their judgment and discretion. It is unnecessary therefore for them to submit to the electorate the question as to whether, under a given situation, they shall increase the housing facilities of the school district by erecting one new building, or more than one, or the question as to where such building or buildings shall be located. The only thing that they are required to go to the taxpayer for is authority to borrow money (or to increase the tax-rate). With respect to this '*the question of loan* shall be decided at an annual school meeting or at a special election to be held for that purpose.' [Sec. 11127.]"

Mandamus will not issue in cases of doubtful right. One asking relief by mandamus "must show himself possessed of a clear and legal right to the remedy." [State ex rel. v. Hudson, 226 Mo. l. c. 265, and cases cited; Adair Drainage Dis. v. Q. O. & K. C. R. Co., 217 S. W. 70, 74, and cases cited; State ex rel. v. Board of Supervisors, 2 Pinney (Wis.) 552.]

It is not necessary for us now to determine whether or not in view of other provisions and the purpose of the school laws, situations might arise such that the extraordinary remedy of mandamus might be invoked to compel a school board to establish and maintain a high school and to that end procure a site and erect the necessary building, funds being provided therefor. The present case, in our judgment, does not present such situation.

III. What we have said renders it unnecessary to discuss at length the further contention of relators that appellants acted arbitrarily and capriciously and not in an honest exercise of their discretion. There was no evidence, in our opinion, sustaining that charge.

The judgment is reversed and the cause remanded with directions to the circuit court to enter judgment quashing the alternative writ and dismissing relators' petition. *Davis* and *Henwood, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. *Blair, P. J.,* and *White, J.,* concur; *Walker, J.,* absent.